92 P.3d 993

**Darcy C.K. FREITAS, Petitioner–Appellant**

v.

**ADMINISTRATIVE DIRECTOR OF the COURTS, State of Hawai'i, Respondent–Appellee.**

**No. 25323.**

Supreme Court of Hawai'i.

June 16, 2004.

Reconsideration Denied July 20, 2004.

Earle A. Partington, Honolulu, on the briefs, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, State of Hawai'i, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that (1) Petitioner-appellant Darcy Freitas (Freitas) may not assert a right of public access to the Administrative Driver's License Revocation Office (ADLRO) on behalf of an anonymous woman who refused to comply with the request that she sign in and provide identification before being permitted entry, (2) because ADLRO hearings are quasi-judicial administrative hearings, due process requires that the hearings be public, and (3) Freitas was entitled to a hearing on his

objections to the ADLRO sign-in and identification procedure limiting public access to his hearing. Based on the foregoing, we remand the case to the ADLRO temporarily to afford Freitas a hearing on his aforesaid objections.

## I.

On January 16, 2002, Freitas was arrested for driving under the influence of an intoxicating liquor (DUI). On January 17, 2002, he was issued a notice of license revocation for DUI. On January 23, 2002, Freitas's driver's license revocation was sustained by a review officer of the ADLRO. On January 30, 2002, Freitas requested a hearing. Just before the hearing on March 8, 2002, Freitas alleges that a woman entered the ADLRO office and asked to attend his hearing. The receptionist told the woman that the woman would have to show identification and sign in or she would not be permitted to attend the hearing. The woman refused to either identify herself or sign in and, thus, was refused entry.[1]

## II.

When the hearing began,[2] Freitas's counsel asked to call the ADLRO receptionist to testify about the incident involving the woman. The hearing officer denied this request and counsel's request to subpoena the Chief Adjudicator to testify about the identification procedure. The hearing officer did not permit a hearing on this matter, but accepted the representations of counsel as to what was said by the woman to the receptionist as "part of the record."

The hearing officer sustained the revocation of Freitas's driver's license pursuant to Hawai'i Revised Statutes (HRS) § 291E–38(e) (Supp.2001), in a written decision dated March 13, 2002. Freitas appealed to the district court of the first circuit. On August 13, 2002, the court affirmed the hearing officer by a written decision.[3] A separate judgment filed on the same day stated that, "[p]ursuant to the Decision and Order Affirming Administrative Revocation entered herein on August 13, 2002, Administrative Revocation is affirmed."

## III.

On appeal, Freitas essentially argues *inter alia* that the court erred in impliedly ruling that Freitas's state and federal constitutional rights to a public hearing were not violated with respect to (1) his right to a hearing on the ADLRO restrictions on public access, and (2) public access to his ADLRO hearing.[4]

## IV.

■ "Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision." *Soderlund v. Admin. Dir. of the Courts, State of Hawai'i*, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001) (internal quotation marks, citations, and brackets omitted) (vacating and remanding

---

1. Freitas contends that, "[w]hile the woman had no objection to a physical security check of her person, she considered the request to identify herself and sign in as invasion of privacy."

2. Freitas, himself, was not present at the hearing. Counsel waived Freitas's appearance.

3. The district court's August 13, 2002 written decision states:

   The [p]etition for [j]udicial [r]eview in this case came on for hearing on May 3, 2002. [Counsel] appeared for [Freitas], who was not present. Respondent[-Appellee Administrative Director of the Courts, State of Hawai'i (Director)] did not appear. The [c]ourt considered the submissions and arguments of counsel and the records and files herein.

   The [c]ourt finds none of the arguments raised by counsel sufficient to warrant reversal, and the [c]ourt find no reversible error in the record.
   For these reasons, the Director's decision is [affirmed].

4. In light of our remand, we do not reach Freitas's contentions that the court in effect erred in concluding that (1) the administrative hearing procedure did not deny Freitas his rights to due process of law under (a) the Firth and Fourteenth amendments of the United States Constitution and Article I, § 5, of the Hawai'i Constitution or (b) the mandate of Chapter 291E, Part III; and (2) the hearing officer did not commit reversible error in citing to unpublished district court ADLRO decisions to justify her decision.

the district court's amended decision affirming the revocation of motorist's driver's license for driving under the influence of alcohol). HRS § 291E–40 (Supp.2002)[5] governs judicial review by the district court of an administrative revocation of a driver's license by the Director.

## V.

Freitas argues that the federal and Hawai'i state constitutions guarantee public access to ADLRO hearings and where restrictions are imposed on such access, a party has a constitutional right to a hearing as to the validity of the restrictions. While the hearing officer declared that Freitas's argument regarding the public's right of access was outside the scope of the administrative process, the officer did address the issue in writing. The hearing officer's Findings of Fact, Conclusions of Law and Decision provides in relevant part:

[I]t is important to make the following determinations related to [c]ounsel's arguments:

1) The ADLRO office area includes three hearing rooms that are not separated from the general officer area. The hearing rooms each have a wooden door without windows. If the hearing door, which remains unlocked but usually closed during hearings, is opened, the persons in the hearing will walk out of the hearing room and into the office area, which include but is not limited to, personal cubicles without any doors and desk tops of the hearing officers and staff, storage, file cabinets, personnel files, computers, office supplies, etc.;

2) The ADLRO bathrooms and water fountain are open to the public and are both located in the back of the officer area. Use of the facilities require members of the public to walk unescorted through the office area, including but not limited to, hearing officer and staff cubicle (where computers, files, personal items are located); the file cabinets and desks which contain all active and pending case files; the facsimile machine which continuously receives transmittals from respondents, law enforcement, and other agencies;

3) Unlike court facilities that have screening devices, cameras, secured door entrances, secured document (case files) storage area, secured judges' chambers and security personnel immediately available and present on location, the ADLRO has none of these security measures;

4) In the past, the ADLRO has been subject to bomb threats, personal threats, angry letters, bullet holes through the windows that surround the office area, empty beer cans left in the perimeter of the office, and angry calls from individuals and their family members, who have had their driver's license revoked;

5) The proposed security procedures were submitted to staff judiciary attorney for review, comments, and recommendations. All recommendations were formalized into the current security measures stated in the ADLRO Memorandum relating to New Security Sign[-]In Procedures dated May 14, 2001; and

6) As of January 1, 2002, the ADLRO has received cases that involve driving while under the influence of the drugs, which also pose another security consideration for the ADLRO.

. . . .

(c) The sole issues before the court shall be whether the director: (1) Exceeded constitutional or statutory authority;(2) Erroneously interpreted the law; (3) Acted in an arbitrary or capricious manner; (4) Committed an abuse of discretion; or (5) Made a determination that was unsupported by the evidence in the record.

(d) The court shall not remand the matter back to the director for further proceedings consistent with its order.

**5.** HRS § 291E–40 pertaining to judicial review by the district court states in relevant part as follows:

**Judicial review; procedure.** (a) If the director sustains the administrative revocation after an administrative hearing, the respondent ... may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. The petition shall be filed with the clerk of the district court in the district in which the incident occurred and shall be accompanied by the required filing fee for civil actions.

As an initial matter, we observe that there is no right afforded by statute to a public hearing in an ADLRO proceeding. However, the Director maintains that the public had full access to the proceeding and "[t]he only reason the anonymous person was turned away was because she refused to sign in and provide identification."

## A.

We hold first, that Freitas lacked standing to assert any right of access the anonymous woman may have claimed. In the absence of well recognized exceptions,[6] this court has clearly held that "[c]onstitutional rights may not be vicariously asserted." *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 256, 861 P.2d 1, 9 (1993) (quoting *State v. Marley*, 54 Haw. 450, 457, 509 P.2d 1095, 1101 (1973)). In *Kaneohe Bay Cruises*, a cruise company sought declaratory relief claiming that Act 313, 1990 Session Laws of Hawai'i, pertaining to restrictions on recreational activities in Kaneohe Bay on the weekends and holidays, was unconstitutional because it "discriminated against persons based on race, national origin, and alienage (specifically, Japanese tourists)." *Id.* at 257, 861 P.2d at 5. The cruise company contended that "much of its business is derived from Japanese tourists." *Id.* at 263, 861 P.2d at 9. This court reasoned, however, that because none of the plaintiffs were Japanese tourists, and "[c]onstitutional rights may not be vicariously asserted, [the cruise company] lack[ed] standing to challenge Act 313 on the claim of invidious discrimination." *Id.*

## B.

Freitas asserts the privacy rights of the anonymous woman, stating that "she would have to sacrifice the very right to privacy sought to be preserved by his or her refusal to show identification and sign[ ]in." Although this court in *Kam* held that clerks at an adult bookstore had standing to assert the privacy rights of their customers to purchase sexually explicit material, this situation differs. *Kam*, 69 Haw. at 489, 748 P.2d at 376; *see supra* n. 6. In *Kam*, this court afforded standing to defendants clerks because "the buyers of pornography ... are usually never charged with violating HRS § 712–1214(1)(a) so [sic] cannot generally raise the privacy issue." 69 Haw. at 489, 748 P.2d at 376 (citing *Eisenstadt v. Baird*, 405 U.S. 438, 446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)) (holding that distributor of contraceptives had standing to assert the rights of unmarried persons who had been denied access to contraceptives because single persons seeking contraceptives were not normally subject to prosecution). The woman who was subject to the identification procedure could have directly challenged the restrictions and, thus, there is no need to extend standing to Freitas.

## VI.

However, Freitas asserts his own right to a public hearing. In support of his position, Freitas cites *Press–Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 8–13, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), which held that the right of criminal defendants to public proceedings resides in the Sixth Amendment while the right of the public and press to a publicly held trial resides in the First Amendment.[7] Although

---

**6.** For example, this court has held that with regard to the right to privacy and first amendment rights, a person whose rights are not violated may raise them for others. *State v. Kam*, 69 Haw. 483, 488, 748 P.2d 372, 375 (1988) (holding that "sellers of pornographic items[ ] possess the standing to assert the privacy rights of those persons who wish to buy those items to read or view in the privacy of the home" because buyers of pornography will usually never be subject to prosecution under the statute at issue); *State v. Manzo*, 58 Haw. 440, 445, 573 P.2d 945, 949 (1977) (explaining that overbreath doctrine as applied to the first amendment is an exception to "traditional rule that a person may not challenge a statute upon the ground that it might be applied unconstitutionally in circumstances other

than those before the court"); *see State v. Kaneakua*, 61 Haw. 136, 597 P.2d 590 (1979) (clarifying that overbreath doctrine is inapplicable to cockfighting because no constitutional right is involved); *see also State v. Bloss*, 64 Haw. 148, 151 n. 6, 637 P.2d 1117, 1121 n. 6 (1981) (explaining that overbreath doctrine is exception to traditional standing rule because "courts recognized that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted").

**7.** Freitas cites *State v. Ortiz*, 91 Hawai'i 181, 981 P.2d 1127 (1999), which adopted the test for public access in criminal proceedings from

Freitas recognizes that public access to "civil proceedings and administrative cases" was not an issue in *Press–Enter. Co.*, he argues that the test applied in that case supports public access to ADLRO hearings.

In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. *First, because[ ] a tradition of accessibility implies the favorable judgment of experiences ... [,] we have considered whether the place and process have historically been open to the press and general public.*

. . . .

*Second, in this setting the [c]ourt has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question.*

. . . .

These considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes. *If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access at-*

*taches.* But even when a right of access attaches, it is not absolute.

*Id.* at 8, 106 S.Ct. 2735 (emphases added) (internal quotation marks and citations omitted). Regarding the first part of the foregoing test, Freitas asserts that the Director opened ADLRO hearings to the public because the ADLRO Notice of Representation form states, "All records maintained by ADLRO constitute public records and may be available for public inspection." As to the second part, Freitas contends that "public scrutiny of ADLRO hearings is highly desirable to ensure that arbitrary and capricious government action is not the basis for revocation or non-revocation of driver's license."

The Director responds that ADLRO hearings do not satisfy the two-part criteria established in *Press–Enter. Co.*, inasmuch as 1) ADLRO hearings are a relatively new creation and therefore have not been historically open to the press or general public and 2) "public access [would not] play[ ] a significant positive role in the functioning of the particular process in question."[8] *Id.* Although, as indicated by the Director, *Press–Enter. Co.* was a criminal case, the test has been applied in civil cases.

*Press–Enter. Co.* Inasmuch as *Ortiz* was a criminal proceeding subject to the right to a public trial afforded by the Sixth Amendment and Art. VII § 14 of the Hawai'i State Constitution and this case is an administrative proceeding, *Ortiz* is distinguishable.

8. The Director contends that Freitas is asserting the legal rights of others, a *jus tertii* claim. In *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), the Supreme Court held that petitioner, a law firm representing a criminal defendant, had standing to assert the defendant's Sixth Amendment right to counsel of choice. The Court set forth two criteria in determining *jus tertii* standing to advance a person's Sixth Amendment rights.

We ask two questions: first, has the litigant suffered some injury-in-fact, adequate to satisfy Article III's case-or-controversy requirement; and second, do prudential considerations which we have identified in our prior cases point to permitting the litigant to advance the claim?
. . . .
The second inquiry—the prudential one—is more difficult. To answer this question, our

cases have looked at three factors: the relationship of the litigant to the person whose rights are being asserted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests. In *Caplin*, the Court found that the first and third factors of the prudential requirement clearly weighed in favor of petitioner inasmuch as the relationship in that case was an attorney-client one, and the statute at issue could impact third persons in defendant's position in the exercise of their constitutional rights. *Id.*
In the present case, the Director argues, under the prudential criteria, that there is no evidence of a relationship between Freitas and the anonymous member of the public who sought to attend his ADLRO hearing. Second, the Director maintains that third party interests are not impacted because there is no evidence that other members of the public or press expressed interest in attending ADLRO hearings.
*Caplin* is not controlling because similar Article III case-or-controversy requirements do not apply to this court, although prudential considerations may be considered. *See Life of the Land v. Land Use Comm'n*, 63 Haw. 166, 171, 623 P.2d 431, 438 (1981) (holding that courts of Hawai'i are not subject to case or controversy limitations, but may apply prudential considerations).

Under the first criterion stated *supra*, in *Press–Enter. Co.*, "courts consistently have found a right of access to civil proceedings and *quasi-judicial administrative proceedings.*" *Detroit Free Press v. Ashcroft*, 195 F.Supp.2d 937, 942 (E.D.Mich.2002) (emphasis added) (brackets and internal quotations omitted); *see also Fitzgerald v. Hampton*, 467 F.2d 755, 766 (D.C.Cir.1972) (finding due process right of access by the public and press to Civil Service Commission hearing). The U.S. District Court in *Detroit Free Press* held that there was a right to a public deportation hearing, 195 F.Supp.2d at 943–44, and the plaintiff newspaper agency had a First Amendment right of access to immigration deportation proceedings. *Id.* at 944. That court applied a strict scrutiny analysis in determining the propriety of closing the immigration proceedings.[9] *Id.* at 946–47. The U.S. District Court also explained that

there are two broad categories of exceptions to the practice of openness in the courtroom: those based on the need to keep order and dignity in the courtroom and those which center on the content of the information to be disclosed to the public. The first category may only need to pass the [*United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d

672 (1968)] test; however, as to the second category, "only the most compelling reasons" can justify closure.

*Id.* at 945 n. 8 (quoting *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1179–80 (6th Cir.1983).)

In *Fitzgerald*, the D.C. Circuit Court determined that Civil Service Commission hearings are quasi-judicial in character because in the hearings "both the [g]overnment and the employee are represented by counsel, witnesses are sworn, testimony is taken, ... evidence is submitted[, and t]he Commission makes findings of fact and binding recommendations." 467 F.2d at 766. Therefore, that court held that due process required that the hearings to be open to the public and the press. *Id.* Under HRS § 291E–38,[10] ADLRO hearings are similar to the hearings described in *Fitzgerald*. Therefore, contrary to the Director's position, the "historical criteria" under *Press–Enter. Co.* applies inasmuch as ADLRO hearings are quasi-judicial in character.

■ While the Director argues that the public would not play a "significant role" in the functioning of the ADLRO hearing process, the federal court in *Detroit Free Press* recognized that administrative proceedings

---

**9.** Under strict scrutiny analysis "[t]he presumption of access may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Detroit Free Press*, 195 F.Supp.2d at 945. The U.S. District Court applied the strict scrutiny test because the closure of the immigration proceedings "center[ed] on the content of the information disclosed to the public." *Id.* at 945–46.

**10.** HRS § 291E–38 states in relevant part, as follows:

(b) The hearing shall be held by the director, as close to the location where the notice of administrative revocation was issued as practical.

(c) The respondent may be represented by counsel and, if the respondent is under the age of eighteen, must be accompanied by a parent or guardian.

(d) *The director shall conduct the hearing and have authority to:*
....
*(1) Administer oaths and affirmations;*
*(2) Examine witnesses take testimony;*
*(3) Receive and determine the relevance of evidence;*
*(4) Issue subpoenas;*

*(5) Regulate the course and conduct of the hearing; and*
*(6) Make a final ruling.*
....
(g) The respondent's prior alcohol and drug enforcement contacts shall be entered into evidence.

(h) The sworn statements provided in section 291E–36 shall be admitted into evidence. The director shall consider the sworn statements in the absence of the law enforcement officer or other person. Upon written notice to the director, no later than five days prior to the hearing, that the respondent wishes to examine a law enforcement officer or other person who made a sworn statement, the director, the director shall issue a subpoena for the officer or other person to appear at the hearing. Personal service upon the law enforcement officer or other person who made a sworn statement shall be made no later than forty-eight hours prior to the hearing time. If the officer or other person cannot appear, the officer or other person at the discretion of the director, may testify by telephone.

(Emphasis added.)

that are quasi-judicial in nature, must be open to the public, as are court proceedings.

> [I]n administrative proceedings of a quasi-judicial character[,] the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand a "fair hearing," essential alike to the validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process ... [therefore,] when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process.

195 F.Supp.2d at 943 (emphasis added). We agree with this rationale and therefore conclude that inasmuch as ADLRO hearings are quasi-judicial in nature, due process requires that the hearings be public.

### VII.

However, "[t]he press' and public's right of access to administrative proceedings ... is not absolute." Detroit Free Press, 195 F.Supp.2d at 944 (citations omitted). Notably "there are two broad categories of exceptions to the practice of openness in the courtroom" that may be applied analogously to administrative proceedings. Id. at 945 n. 8. As previously mentioned, in Brown & Williamson Tobacco Corp., the Sixth Circuit held that the first category was "based on the need to keep order and dignity in the courtroom and [the second,] those which center on the content of the information to be disclosed to the public." 710 F.2d at 1179. As to the first category, the Sixth Circuit declared that

> the first type of access restriction resembles the traditional time, place and manner restrictions on speech[, requiring adherence to] ... the following three-part test: that the regulation serve an important governmental interest; that this interest be unrelated to the content of the information to be disclosed in the proceeding; and that there be no less restrictive way to meet that goal.

Id. (emphasis added) (citing O'Brien, 391 U.S. at 377, 88 S.Ct. 1673). According to that court, "[t]hese limitations on access, such as regulating the number of spectators or the use of flashbulbs or cameras, have been accepted in many instances as based on the legitimate societal interest in protecting the adjudicatory process from disruption." Id. The second category on limitations on access to court proceedings are "content-based exceptions to the right of access[.]" Id. Because this case involves sign-in and identification restrictions and not content-based limitations resulting in closure of the proceedings, the test set forth above applies.

### VIII.

However, the ADLRO denied Freitas a hearing on his objections to the identification and sign-in procedures. Because he has a right to a public hearing, as discussed supra section VI., he is entitled to show that the procedure limiting public access was not warranted. See Detroit Free Press, 195 F.Supp.2d at 944; see also Pechter v. Lyons, 441 F.Supp. 115, 117–18 (D.C.N.Y.1977).

### IX.

Based on the foregoing, we temporarily remand the case to the ADLRO to afford Freitas a hearing on his aforesaid objections. Therefore,

IT IS HEREBY ORDERED that the case is temporarily remanded to the ADLRO to promptly conduct a hearing as set forth herein. Within thirty (30) days of the date of this opinion, the ADLRO hearing officer shall file its findings of fact, conclusions of law, and order pertaining to the issues presented on remand. Freitas's counsel shall ensure that a copy of the ADLRO's findings, conclusions, and order is transmitted as a supplemental record to this court within five (5) days from the date of its entry.

The clerk of this court shall forthwith transfer to the ADLRO the files and transcripts previously docketed under No. 25323. The clerk of the ADLRO shall retransmit the

record, together with the supplemental record within the time above limited.