133 P.3d 1199

Molly SLUPECKI, Petitioner–Appellant

v.

ADMINISTRATIVE DIRECTOR OF the
COURTS, STATE OF HAWAI'I,
Respondent–Appellee.

No. 27260.

Supreme Court of Hawai'i.

May 3, 2006.

**408**

Earle A. Partington, on the briefs, Honolulu, for petitioner-appellant.

1. The Honorable William Cardwell presided.

2. Hawai'i Revised Statutes (HRS) § 291E–61(a) provides as follows:

   **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
   (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

Kimberly A. Tsumoto and Girard D. Lau, Deputy Attorneys General, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that the district court of the first circuit (the court)[1] erred in sustaining the notice of default issued by the Director (Director or Chief Adjudicator) of the Administrative Driver's License Revocation Office (ADLRO) revoking the license of Petitioner–Appellant Molly Slupecki (Petitioner) for a period of three months. Therefore, the court's April 25, 2005 judgment is vacated and this case is remanded to the ADLRO to conduct a hearing on the matter of default. Prior to such hearing, the ADLRO shall inform Petitioner of the procedure for motions to set aside a default and the requirements to be satisfied for setting a hearing for that purpose.

**I.**

On February 25, 2005, Petitioner was involved in a motor vehicle accident in which she allegedly sideswiped a parked vehicle. After a field sobriety test, Petitioner was arrested and taken to the police station. At the station, Petitioner read and signed an acknowledgment of receipt of sanction information and implied consent testing choice form. Petitioner was charged with operating a vehicle under the influence of an intoxicant, a violation of Hawai'i Revised Statutes (HRS) § 291E–61(a) (Supp.2005).[2] Her license was then suspended by the arresting officer pursuant to HRS § 291E–61(b)(1) (Supp.2005).[3]

   (2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
   (3) With .08 or more grams of alcohol per two hundred ten liters of breath; or
   (4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

3. HRS § 291E–61(b) states in pertinent part as follows:

   (b) A person committing the offense of operating a vehicle under the influence of an intoxicant *shall be sentenced as follows without possibility of probation or suspension of sentence:*

The notice of administrative revocation, however, was not explained to Petitioner at this time.

█ HRS § 291E–37 (Supp.2005) provides in relevant part as follows:

**Administrative review; procedures; decision.** (a) The director automatically shall review the issuance of a notice of administrative revocation and shall issue a written decision administratively revoking the license and privilege to operate a vehicle, and motor vehicle registration if applicable, or rescinding the notice of administrative revocation. . . .

On March 4, 2005, a Notice of Administrative Review Decision was issued by an ADLRO review officer, sustaining the revocation of Petitioner's driver's license. The notice stated that, based upon the preponderance of the evidence considered on review, the revocation was sustained. As a first time DUI offender, Petitioner's license was revoked for a three-month period.[4]

On March 9, 2005, Petitioner requested a hearing on the revocation. In her sworn statement to the Chief Adjudicator dated March 18, 2005 (statement), Petitioner stated that, "[o]n March 9, 2005, I came to the ADLRO and paid the $30 fee to request a hearing. I was informed by the ADLRO staff that the hearing notice would be mailed to me at my home address in Kaneohe."

On March 10, 2005, the ADLRO mailed to Petitioner a Notice of Administrative Hearing. The notice stated that Petitioner's hearing was set for March 16, 2005 at 11:00 a.m. The notice contained a certificate of service, signed by one Pamela Lau for the "Chief Adjudicator" that stated, "I hereby certify that the original of this notice of administrative hearing was served on [Petitioner] on March 10, 2005 by mail, postage prepaid, at [Petitioner's home address]."

Petitioner did not appear at the hearing. On March 17, 2005, the hearing officer mailed Petitioner a Notice of Administrative Hearing Decision and a Notice of Default, revoking her license for three months. In this regard, HRS § 291E–38 (Supp 2005) states in pertinent part as follows:

**Administrative hearing; procedure; decision.** . . .

(m) If the respondent fails to appear at the hearing, or if a respondent under the age of eighteen fails to appear with a parent or guardian, administrative revocation shall take effect for the period and under the conditions established by the director in the administrative review decision issued by the director under section 291E–37.

Petitioner maintains that she did not receive the hearing notice until Thursday, March 17, 2005. Petitioner points out that she retained her present counsel for the ADLRO hearing on Tuesday, March 15, 2005, prior to the date the hearing was set.

(1) For the first offense . . . :

. . . .

(B) Ninety-day prompt suspension of license and privilege to operate a vehicle during the suspension period . . . [.]
(Emphasis added.)

4. At this point, the term of Petitioner's administrative revocation would have expired. We note that a three-month revocation will likely expire before an appeal can be heard before an appellate court. However, Petitioner's claim is still justiciable because "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit." *In re Thomas,* 73 Haw. 223, 226, 832 P.2d 253, 255 (1992) (quoting *Life of the Land v. Burns,* 59 Haw. 244, 251, 580 P.2d 405, 409–10 (1978)).

Additionally, when the question involved affects the public interest and an authoritative determination is desirable for the guidance of public officials, a case will not be considered moot. *See United Pub. Workers, AFSCME, Local 646 v. Yogi,* 101 Hawai'i 46, 58, 62 P.3d 189, 201 (2002) (Acoba, J., concurring) (stating that "[a]mong the criteria . . . are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question[ ]" (quoting *Johnston v. Ing,* 50 Haw. 379, 381, 441 P.2d 138, 140 (1968) (citations omitted))); *see also* Avis K. Poai, *Recent Developments: Hawaii's Justiciability Doctrine,* 26 U. Haw. L.Rev. 537, 548–52 (Summer 2004) (observing that the "public interest" and "capable of repetition, yet evading review" exceptions are often merged, but should not be as they are two distinct exceptions that require different considerations).

**410**

Upon receipt of the hearing notice, she claims to have notified her counsel immediately.

A notice of representation, authorizing counsel to represent Petitioner, was received via fax by the ADLRO on March 17, 2005 at 8:04 a.m. On Friday, March 18, 2005, at 5:39 p.m.,[5] Petitioner's counsel faxed a letter to the ADLRO requesting (1) that Petitioner's default be set aside and she be given a new hearing, (2) that if the first request was denied, that ADLRO inform Petitioner of the procedure for setting aside defaults, (3) that ADLRO indicate what provisions existed for holding a hearing for that purpose, and (4) that a hearing be scheduled on the issue of whether the default should be set aside (the March 18 letter):

> I am writing to request that a new hearing be scheduled in the above case. It appears that your office sent out a notice of hearing showing that the hearing was scheduled for March 16, 2005 to [Petitioner[6]] on March 10, 2005. Late in the afternoon of March 15, 2005, [Petitioner] retained me. I asked [Petitioner] to let me know the minute that she received the notice. It appears that I entered my appearance after the notice was mailed to [Petitioner] and after the hearing was scheduled. *As you can see from [Petitioner's] attached letter, she did not receive the notice until March 17, 2005. In view of the lack of notice, it only seems fair that the default should be set aside and a new hearing scheduled.*
>
> I also wish to know what prescribed procedure the ADLRO has for setting aside defaults that are entered in cases such as this and what provision there is for a hearing to set aside a respondent's default. I hereby request such a hearing if you are unwilling to set this case for a new hearing.

(Emphasis added.) In addition, Petitioner's counsel attached the following sworn statement from Petitioner:

> I am the [Petitioner] in the above case. On March 9, 2005, I came to the ADLRO

and paid the $30 fee to request a hearing. I was informed by the ADLRO staff that the hearing notice would be mailed to me at my home address in Kaneohe. On March 15, 2005, I checked my mail and the notice had not yet been received. On that same day, I hired attorney Earle A. Partington to represent me in this matter and informed him that I would let him know as soon as I received the hearing notice. On March 17, 2005, I checked my mail and found the hearing notice. The notice stated my hearing had been set for the previous day. *Had I known in advance of the hearing, I would most certainly have informed my attorney so that he could either attend or continue the hearing.*
>
> *I swear that the above is true and correct.*

(Emphasis added.)

On March 22, 2005, the Chief Adjudicator responded to Petitioner's request in a letter to her counsel, stating that (1) Petitioner failed to appear at her administrative hearing, (2) the information submitted was insufficient to set aside the default, (3) Petitioner's statement was "not credible and no independent documentation" had been submitted, (4) the default would not be set aside, nor would a hearing be scheduled, (5) Petitioner had satisfied the procedure for "a possible reconsideration of a default," but no new hearing on revocation would be held, and (7) Petitioner could seek judicial review (March 22 letter).

> This responds to your March 18, 2005 written request to reconsider and set aside the *Notice of Administrative Hearing Decision* ("NAHD"), issued on March 17, 2005, due to the failure of [Petitioner] to appear at her March 16, 2005 hearing. The record reflects that [Petitioner's] hearing was timely set and the *Notice of Administrative Hearing* properly mailed to [Petitioner's] address. [Petitioner] failed to appear at her duly scheduled and noticed hearing.
>
> The information you provided with this letter, dated March 18, 2005 and attached

---

5. The letter was apparently received by the ADLRO on Monday, March 21, 2005, at 11:25 a.m.

6. In the letter Petitioner was referred to as "Respondent."

to [Petitioner's] statement, dated March 18, 2005, *in support of your request for reconsideration are insufficient to set aside the default. Further, [Petitioner's] statement is not credible and no independent documentation in support of her statement was submitted.* Hence, pursuant to HRS § 291E–38(m), your request to set aside the default and schedule a new hearing is hereby denied. The administrative driver's license revocation shall take effect for the period and under the conditions set forth in the *Notice of Administrative Review Decision* issued on March 4, 2005. You may file a Petition for Judicial Review of the NAHD within 30 days of the date the decision was issued (See HRS § 291E–40).

Finally, your submittal of your letter and attachment have satisfied the procedure established for a possible reconsideration of a default decision *and no hearing shall be set.*

(Emphases added.)

## II.

Pursuant to HRS § 291E–40 (Supp 2005),[7] Petitioner sought judicial review on March 24, 2005. A hearing was held on April 22, 2005. The court affirmed the administrative revocation.

In its decision, the court recognized that revocation of a driver's license was subject to due process requirements:

> The theme in all of the cases is that a driver's license is a constitutionally protected property right. As such, it must not be taken away without due process. Moreover, courts are hesitant to have cases decided on a default basis, preferring that decisions be made on the merits of the case. Thus, if a party defaults, court rules permit that party to seek to explain the default and have it set aside.

(Citations omitted.) However, the court found that the issue was not one of whether procedural due process had been denied, but,

rather, "whether the record reflects the ADLRO's willingness to consider a request to set aside a default and, if so, whether the ADLRO abused its discretion or committed some other error in refusing to set aside Petitioner's default or setting a hearing on the request."

The court found that the ADLRO was justified in rendering its decision. The court stated in pertinent part:

> *While the ADLRO's letter in denying the request did not explain its procedures, it announced that there were established procedures* to reconsider a default and that the attorney's letter and attachment satisfied those procedures. This indicates both a willingness to consider setting aside a default and procedures for doing so. . . .
>
> *In denying the request, the ADLRO stated that Petitioner's statement was not credible and that no independent documentation supporting the request was submitted. Both of these statements seem reasonable* given the record. Petitioner does not claim she failed to receive the notice. All she claims is that it was not in her mail on March 15, 2005, and was in her mail on March 17, 2005. No mention is made of the mail on March 16, 2005. If it was received on March 17, 2005 and her attorney was already retained as claimed, one must ask why the request to set aside the default was not submitted until after business hours on March 18, 2005. Moreover, Petitioner's claim is inconsistent with the known facts of the time of mailing and receipt of the Notice of Administrative Review Decision. Given these facts, the ADLRO was not required to simply accept Petitioner's statement that it took seven days for the notice to reach Kaneohe from Honolulu. Thus, this is quite different from situations in which counsel acknowledges receipt and acknowledges making a scheduling mistake attempting to demonstrate reasons therefor, arguably making the mistake excusable.

---

7. HRS § 291E–40, entitled "Judicial review; procedure," reads in pertinent part:

    (a) If the director sustains the administrative revocation after an administrative hearing, the respondent . . . may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. The petition shall be filed with the clerk of the district court[.]

It is too easy for one to simply claim non-receipt or late receipt to suggest that such a claim always leads to a setting aside of a default or the requirement of a hearing thereon, especially when the claim is inconsistent with known facts.

(Emphases added.) Petitioner then appealed to this court on April 27, 2005.

### III.

On appeal, Petitioner argues that the court "erred in failing to set aside the default entered against [Petitioner] because (1) there is no known established procedure at the ADLRO for setting aside defaults, ... (2) [Petitioner] was [not given] prior notice of what procedure would be followed for her request to set aside the default and [ (3) she was denied] an opportunity to be heard at a hearing as to why the default should be set aside[.]" Essentially, Petitioner asserts that she was not afforded procedural due process of law as guaranteed under article I, section 5 of the Hawai'i Constitution and the Fourteenth Amendment to the United States Constitution.

Respondent answers that (1) Petitioner's claim regarding a right to prior notice of the ADLRO's procedure for setting aside defaults (and a hearing on setting aside defaults) does not warrant reversal; (2) the ADLRO provided Petitioner with notice and the opportunity to be heard prior to her license revocation; and (3) in the alternative, the court should remand this case to the ADLRO for a hearing on Petitioner's default.

To this alternative argument, Petitioner replies that the court "may not remand this case to the ADLRO for a hearing [on the default] because to do so would violate legislative intent that there be no remands," pursuant to HRS § 291E–40 (Supp.2005).[8] In addition, Petitioner urges this court to impose sanctions against the Attorney General, counsel for the ADLRO, for unethical conduct. Petitioner argues that mention of Petitioner's intoxilyzer test results is not relevant to the appeal and that the Attorney General

included this information in "an unethical attempt to prejudice this court against [Petitioner]." [9]

Petitioner asks that this court reverse the decision of the court upholding her driver's license revocation and order that her driver's license be returned to her.

### IV.

■ " 'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision.' " *Freitas v. Admin. Dir. of the Courts*, 108 Hawai'i 31, 43, 116 P.3d 673, 685 (2005) (quoting *Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001)) [hereinafter *"Freitas II"*].

### V.

■ In connection with Petitioner's first argument, article I, section 5 of the Hawai'i Constitution and the Fourteenth Amendment to the United States Constitution guarantee, *inter alia*, that "no person shall be deprived of life, liberty, or property without the due process of law." In *Kernan v. Tanaka*, 75 Haw. 1, 8, 856 P.2d 1207, 1212 (1993), Kernan's license was revoked pursuant to HRS chapter 286, part XIV, for violating HRS § 291–4. Kernan argued that the Administrative Revocation Program law facially violated drivers' due process rights because it failed to provide sufficient procedural protections. *Id.* at 13, 856 P.2d at 1214. In resolving that issue this court said:

[A] claim of a due process right to a hearing requires a two step analysis: (1) is the particular interest which the claimant seeks to protect by a hearing "property" within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is "property" what specific procedures are required to protect it.

---

8. HRS § 291E–40(d) states that "[t]he court shall not remand the matter back to the director for further proceedings consistent with its order."

9. In light of the disposition herein, we do not reach this issue.

*Id.* at 21, 856 P.2d at 1218 (quoting *Aguiar v. Hawaii Hous. Auth.,* 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974)).

As to the first step, this court stated that "[a] driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license." *Id.* at 21, 856 P.2d 1207, 856 P.2d at 1218 (citing *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)). As to the second step, this court applied the test outlined in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> [The] identification of the specific dictates of due process generally requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the government's interest, including the function involved and the fiscal or administrative burdens that the additional procedures would entail.

*Kernan,* 75 Haw. at 22–23, 856 P.2d at 1218–19 (brackets in original).

In this case, the application of the *Mathews* factors to the procedure employed by the ADLRO in denying Petitioner's request for reconsideration evidences a violation of due process requirements. First, the effect of the default decision was to deprive Petitioner of her driver's license. This court has already held that a driver's license is a constitutionally protected property interest. *Id.* at 21, 856 P.2d at 1218.

Second, notwithstanding the option to appeal the ADLRO's decision, the risk of an erroneous deprivation of such interest through the procedures used is great, as there was no apparent procedure established by the ADLRO for determining whether a default was appropriately entered. *Kernan* held that "[t]he fact that Hawaii's procedure provides for a *predeprivation* review *and hearing* 'abundantly weights this second part of the [*Mathews* ] analysis[.]' " *Id.* at 27, 856

P.2d at 1221 (emphasis in original and emphasis added) (brackets in original). In the absence of a similar "review and hearing," there is a high risk that there will be an erroneous deprivation of Petitioner's property.

Finally, an evaluation of the government's interest, which includes the function of the ADLRO and the fiscal and administrative burdens that any additional or substitute procedural requirement would entail, when balanced, are outweighed by Petitioner's constitutionally protected property and due process rights. In *Kernan,* public safety was considered the main governmental concern, and this court determined that the "revocation program allowed the State to achieve [its] goals without overburdening individuals or the judicial system." *Id.* at 29, 856 P.2d at 1229.

Unlike *Kernan,* this case involves a denial of a hearing altogether. In light of *Kernan,* there is no governmental interest which supports denial of such a hearing on a default order. Petitioner has been denied her constitutional right to procedural due process before deprivation of a property interest. Therefore, in applying the *Mathews* analysis we conclude that the denial of a hearing on whether to set aside a default order violates due process requirements.

## VI.

As to Petitioner's first argument, Respondent contends that the ADLRO provided Petitioner with a "duly scheduled and noticed hearing" and that Petitioner defaulted with respect to that hearing. To the contrary, as discussed above, Petitioner has not had a hearing with respect to the revocation of her license or with respect to the default entered by the Director which precluded the revocation hearing. A hearing is " 'a proceeding where evidence is taken to determine issue[s] of fact and to render [a] decision on [the] basis of that evidence.' " *Takahashi v. Tanaka,* 10 Haw.App. 322, 327, 871 P.2d 796, 798 (1994)[10] (quoting *Black's Law Dictio-*

10. In *Takahashi v. Tanaka,* 10 Haw.App. 322, 324, 871 P.2d 796, 797 (1994), the district court affirmed a default order issued by the ADLRO

pursuant to HRS § 286–259(k) when Takahashi failed to appear at his scheduled hearing. Relying on HRS § 286–259(h), which provides that

*nary* 721 (6th ed.1990)). In *Takahashi,* the Intermediate Court of Appeals (ICA) held that a judgment entered by default does not amount to a hearing. *Id.*

In this case, Petitioner was clearly denied a hearing guaranteed by the due process clause. To reiterate, Petitioner made three requests of the ADLRO Chief Adjudicator in the March 18 letter, including one for a new hearing or, alternatively, a hearing on whether the default should be set aside. In response, the Chief Adjudicator denied all of Petitioner's requests.

Additionally, the Chief Adjudicator apparently made a determination of Petitioner's veracity with respect to her sworn statement, without a hearing. *See Apolskis v. Concord Life Ins. Co.,* 445 F.2d 31, 34 n. 1 (7th Cir.1971) (stating that "[c]redibility determinations are the province of the district judge" but that "a trial judge may not totally disregard uncontradicted and apparently creditable testimony where no basis for so doing appears in the record").

In the instant case, Petitioner's statement was not so inherently incredible as to warrant out-right rejection. The Chief Adjudicator stated summarily that "[Petitioner's] statement is not credible and no independent documentation in support of her statement was submitted," adopting "the expedient of technically accepting the offered proof but summarily rejecting its weight or credibility." *Frito–Lay, Inc. v. Morton Foods, Inc.,* 316 F.2d 298, 301 (10th Cir.1963) (holding that the summary rejection of a witness as non-credible is prejudicial and the proper administration of justice requires more); *cf. Earp v. Ornoski,* 431 F.3d 1158, 1170 (9th Cir.2005) (concluding that a credibility determination cannot be made on summary judgment).

## VII.

■■ As to her second argument, Petitioner contends that the Chief Adjudicator'

an administrative "hearing shall be recorded," Takahashi had argued that the district court erred because "no transcript of the proceedings before the hearing officer was prepared." *Id.* In determining that no error occurred, the Intermediate Court of Appeals stated that "since there was no 'hearing' within the purview of HRS

ruling on the merits before a procedure for setting aside default was made known to Petitioner is a procedural defect and therefore the court erred in failing to address Petitioner's request for notice and for a hearing on the default issue. Generally, "except in emergency situations[,] due process requires that when a State seeks to terminate an interest ..., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Guillemard Gionorio v. Contreras Gomez,* 301 F.Supp.2d 122, 133 (D.Puerto Rico 2004) (quoting *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)).

In *Freitas II,* Freitas asserted that he was deprived of due process because HRS chapter 291E failed to outline a specific procedure to be employed in an administrative hearing. 108 Hawai'i at 44, 116 P.3d at 686. Freitas requested that the hearing officer explicitly state what procedure would be employed in the hearing, who had the burden of proof, and when such burden shifted. *Id.* at 41, 116 P.3d at 683. In response, the hearing officer noted that "the statute [allowed the hearing officer] to conduct and control the course of [the] hearing and the procedure that [the court] would follow." *Id.*

This court relied on *Desmond v. Admin. Dir. of the Courts,* 91 Hawai'i 212, 982 P.2d 346 (App.1998), *rev'd on other grounds,* 90 Hawai'i 301, 978 P.2d 739 (1999), which held that a hearing officer "did not err in following her procedure rather than the procedure proposed by [the motorist]." *Freitas II,* 108 Hawai'i at 44, 116 P.3d at 686 (citing *Desmond,* 91 Hawai'i at 219, 982 P.2d at 353) (brackets in original). In *Desmond,* the ICA noted that "it is *advisable that,* at the commencement of the administrative hearing, the Hearing Officer inform the parties what procedure he or she will follow." 91 Hawai'i at 219, 982 P.2d at 353 (emphasis added).

§ 286–259(h), there was no obligation to record the proceedings," concluding that a failure to appear resulting in a default is not a hearing. *Id.* at 328, 871 P.2d at 798. The issues raised by Petitioner in this case were not raised in *Takahashi.*

In rejecting Freitas's argument, this court observed that "procedural due process requires that a person have an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" 108 Hawai'i at 44, 116 P.3d at 686 (quoting *Farmer v. Admin. Dir. of the Courts,* 94 Hawai'i 232, 238, 11 P.3d 457, 463 (2000)); *cf. Padilla–Agustin v. Immigration & Naturalization Serv.,* 21 F.3d 970, 974 (9th Cir.1994) (holding that due process requires not only notice, but "sufficient information to allow [Petitioner] to prepare and present objection to the agency's preliminary action or decision").[11] Since the hearing officer had advised Freitas of the procedure that would be followed, this court declined to overrule *Desmond* and held that the hearing officer did not commit reversible error. 91 Hawai'i at 220–21, 982 P.2d at 354–55.

Unlike *Freitas II,* in which there was meaningful prior instruction by the ADLRO on the procedure to be followed at the revocation hearing, the Chief Adjudicator's March 22 letter did not inform Petitioner of the procedure available to set aside default orders. The court did not consider whether the absence of notification of a procedure constituted a violation of due process. Instead, the court decided that the issue it was concerned with, as mentioned before, was whether "the ADLRO was willing to consider a request to set aside a default and, if so whether the ADLRO abused its discretion or committed some other error in refusing to set aside" the default. The court thus ruled that it was sufficient that a procedure existed.

But as the court correctly pointed out, no procedure is ever explained in the March 22 letter, reproduced *supra.* The court acknowledged that "[w]hile the ADLRO's letter in denying the request *did not explain its procedure,* it announced that there were established procedures to reconsider a default[.]" (Emphasis added.) The letter only advised Petitioner that a procedure existed and had been applied. In *Freitas II,* however-

er, this court reiterated that it is advisable that "at the commencement of the administrative hearing, the hearing officer inform the parties what procedure he or she will follow" prior to the application of such procedures. *Freitas II,* 108 Hawai'i at 45, 116 P.3d at 687 (quoting *Desmond,* 91 Hawai'i at 219, 982 P.2d at 353). The failure to notify Petitioner of the procedure to follow in the ADLRO's "consider[ation of] a request to set aside default" infringed on Petitioner's procedural due process right to be heard "at a meaningful time and in a meaningful manner." *Id.* at 44, 116 P.3d at 686 (internal quotation marks and citation omitted).

We note, also, that in upholding the ADL-RO decision, the court incorrectly determined that

> while the procedure followed in this case was not ideal, *it provided Petitioner with an opportunity to seek reversal of the default and provided guidance as to what it would take to justify that reversal. Petitioner either could not or chose not to submit such evidence* to support her assertion of late receipt.

(Emphasis added.) This is not an accurate reading of the March 22 letter. The Chief Adjudicator ruled that the information submitted with the March 18 letters "[was] insufficient to set aside the default," but the Chief Adjudicator did not inform Petitioner in advance of what would be sufficient to set aside a default. Additionally, the Chief Adjudicator maintained in the letter that "no independent documentation ... was submitted," but there is nothing in the record to indicate that the Chief Adjudicator ever informed Petitioner that "independent documentation" was required or in what form the documentation should be in or what the contents of the submission should include. Plainly, Petitioner was not provided with information sufficient to prepare and present objections to the agency's decision. *See Padilla, supra.*

---

11. In *Padilla–Agustin v. Immigration & Naturalization Serv.,* 21 F.3d 970, 975 (9th Cir.1994), the Board of Immigration Appeals's Notice of Appeal Form mentions that the applicant must "specify reasons for this appeal" and to "continue on separate sheets of paper if necessary." The back of the form notifies applicants that "if the factual or legal basis for the appeal is not sufficiently described the appeal may be summarily dismissed." *Id.*

In referring to Petitioner's choice to "submit such evidence," the court manifested an expectation that Petitioner was required to submit what in fact she had not been informed she must provide. What constitutes "such evidence" was never defined. The March 22 letter did not set forth what would be considered sufficient to set aside the default. Thus, contrary to the court's statement, the March 22 letter did not "provide[ ] guidance as to what it would take to justify that reversal"; it merely stated that the March 18 letter and Petitioner's attached statement were insufficient.

Further, the court was incorrect in stating that "Petitioner either could not or chose not to submit such evidence to support her assertion of late receipt." For, after relating that the matters submitted by Petitioner were insufficient, the March 22 letter concluded that "hence, pursuant to HRS § 291E–38(m), your request to set aside the default and schedule a new hearing is hereby denied ." It then directed that "[t]he administrative driver's license revocation *shall* take effect" and Petitioner's only option for recourse was to "file a petition for judicial review." (Emphasis added.) Petitioner had no opportunity and, hence, no choice "to submit such evidence" in response to the ADLRO letter inasmuch as it was the first time Petitioner was informed of the need for "such evidence."

## VIII.

Respondent urges us to remand the case to the ADLRO. Petitioner argues that we are prohibited from doing so pursuant to HRS § 291E–40(d), which states that "[t]he court shall not remand the matter back to the director for further proceedings consistent with its order." Petitioner reminds us that "[w]hen faced with an issue of statutory interpretation, '[o]ur primary duty is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself.' " *Lara v. Tanaka*, 83 Hawai'i 24, 26, 924 P.2d 192, 194 (1996) (quoting *Ing v. Acceptance Ins. Co.*, 76 Hawai'i 266, 270, 874 P.2d 1091, 1095 (1994)). In *State v. Kalama*, 94 Hawai'i 60, 63, 8 P.3d 1224, 1228 (2000), this court stated that "where the statutory language is plain and unambiguous, [the appellate court's] sole duty is to give effect to its plain and obvious meaning." (Internal quotation marks and citation omitted.) In doing such, we note that under HRS § 291E–40(a), the reference to the "court" is to the district court and, therefore, does not preclude this court from remanding the case.[12]

Moreover, we note that in *Freitas v. Admin. Dir. of the Courts*, 104 Hawai'i 483, 484, 92 P.3d 993, 994 (2004) [hereinafter *"Freitas I "*], this court remanded a case back to the ADLRO to afford the petitioner a hearing on his objections, as is the case here. In that case, Freitas contended that he was denied a hearing on whether ADLRO hearings were public, thereby denying him due process. *Id.* at 484–85, 92 P.3d at 994–95. This court agreed and remanded. *Id.* at 489, 92 P.3d at 999. Specifically, it was stated that "the

---

**12.** Under HRS § 291E–40(a), the reference to "court" is to the district court. HRS § 291E–40 states in relevant part:

(a) If the director sustains the administrative revocation after an administrative hearing, the respondent ... *may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. The petition shall be filed with the clerk of the district court in the district in which the incident occurred* [.] ... The filing of the petition shall not operate as a stay of the administrative revocation, *nor shall the court stay the administrative revocation pending the outcome of the judicial review.* ...

(b) *The court shall schedule the judicial review as quickly as practicable, and the review shall be on the record of the administrative hearing without taking of additional testimony or evidence.* If the petitioner fails to appear without just cause or, in the case of a petitioner under the age of eighteen, the petitioner fails to appear with a parent or guardian, *the court shall affirm the administrative revocation.*

(c) *The sole issues before the court shall be whether the director:*

. . . .

(d) *The court shall not remand the matter back to the director for further proceedings consistent with its order.*

(Emphases added.) HRS § 291E–40(a) allows for "judicial review" by the "district court." HRS § 291E–40(b) states that "the court shall schedule the judicial review." As the "judicial review" provided for in (a) is to be conducted by the "district court," it follows that references to "the court" in HRS § 291E–40 mean the "district court." Therefore, HRS § 291E–40(d) does not preclude this court from remanding the case.

ADLRO denied Freitas a hearing on his objections to the identification and sign-in procedures.... [H]e is entitled to show that the procedure limiting public access was not warranted." *Id.* The same action is appropriate in the instant case.

### IX.

Based on the foregoing, the court's April 25, 2005 judgment is vacated and the case is remanded to the ADLRO in accordance with our decision herein.