**Electronically Filed
Supreme Court
SCWC-15-0000859
21-DEC-2020
07:46 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---


JUSTIN T. WOLCOTT,
Petitioner/Petitioner-Appellant,

vs.

ADMINISTRATIVE DIRECTOR OF THE COURTS, STATE OF HAWAIʻI,
Respondent/Respondent-Appellee.


SCWC-15-0000859

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000859; JR. NO. 1DAA-15-0004

DECEMBER 21, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, and WILSON, JJ.[1]

OPINION OF THE COURT BY NAKAYAMA, J.

## I.    INTRODUCTION

Petitioner/Petitioner-Appellant Justin T. Wolcott

---

[1]     Associate Justice Richard W. Pollack, who was a member of the court when the oral argument was held, retired from the bench on June 30, 2020.

(Wolcott) appeals from the judgment and order of the District Court of the First Circuit (district court) affirming the administrative revocation of his driver's license by a hearing officer of the Administrative Driver's License Revocation Office (the ADLRO) for a period of ten years. The ADLRO sustained the automatic revocation of Wolcott's driver's license for ten years based on its determination that Wolcott was subject to a mandatory ten-year revocation period for the offense of operating a vehicle under the influence of an intoxicant (OVUII) because Wolcott had three or more prior alcohol enforcement contacts.

In its written decision, the ADLRO found that Wolcott had a total of four prior alcohol enforcement contacts, based on a driving history abstract obtained by the ADLRO from the Problem Driver Pointer System [PDPS Abstract].[2] The ADLRO provided Wolcott with a copy of the PDPS Abstract in the form of a ten-page computer print-out prior to his hearing. The PDPS Abstract indicated that Wolcott had a total of four prior alcohol enforcement contacts: two in Hawai'i, which Wolcott

_____

[2] The PDPS was developed by the National Highway Traffic Safety Administration "to provide a centralized repository of information on individuals whose privilege to operate a motor vehicle have been revoked, suspended, cancelled, denied, or who have been convicted of serious traffic-related offenses." U.S. Dept. of Trans., National Driver Registry (NDR) Problem Driver Pointer System (PDPS) PIA, https://www.transportation.gov/individuals/privacy/national-driver-registry-ndr-problem-driver-pointer-system-pdps-pia.

conceded, and two in Oregon, which Wolcott claimed to have no knowledge of.

Wolcott appealed to the Intermediate Court of Appeals (ICA) and argued that (1) the district court erred in holding that the ADLRO was not required to lay foundation to admit the PDPS Abstract into evidence; and (2) the ADLRO failed to provide notice as what the PDPS Abstract actually was or where it originated until after the hearing. The ICA affirmed.

In his application for writ of certiorari, Wolcott maintains that the ADLRO was required to lay foundation to admit the PDPS Abstract and that he was denied due process because the PDPS Abstract that he received in discovery was untitled, failed to identify its source, and used codes without any explanation of their meaning. Wolcott argues that the PDPS Abstract failed to provide him with adequate notice of the Oregon alcohol enforcement contacts and a meaningful opportunity to respond at the hearing.

Due process requires that Wolcott have a "meaningful opportunity" to challenge the revocation of his driver's license, which is a constitutionally protected property interest. The procedures that the ADLRO implemented in this case, namely, sending Wolcott a cryptic and unclear computer printout, failed to provide him with adequate notice of the two

Oregon alcohol enforcement contacts and denied him a meaningful opportunity to respond.  Thus, the ADLRO erroneously considered the two Oregon alcohol enforcement contacts in determining the length of his revocation period because Wolcott was not able to challenge those convictions at the revocation hearing.

For the reasons stated herein, we hold that the procedures used by the ADLRO in this case denied Wolcott due process.  Had the ADLRO considered only Wolcott's two prior alcohol enforcement contacts in Hawai'i, the mandatory revocation period would have been four years.  Accordingly, we affirm the ICA's June 25, 2019 judgment on appeal, except that part of the judgment relating to the additional revocation period for having three or more prior alcohol enforcement contacts.  We vacate the ICA's judgment on appeal relating to the additional six-year revocation period and remand to the ADLRO in accordance with our decision herein.

## II.  BACKGROUND

On August 14, 2014, Wolcott was arrested for OVUII pursuant to Hawai'i Revised Statutes (HRS) § 291E-61(a).[3]

---

[3]    HRS § 291E-61(a) (Supp. 2014) provides in relevant part,

> **Operating a vehicle under the influence of an intoxicant.**  (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (continued. . .)

4

Wolcott refused to submit to a blood or breath test for the purpose of determining alcohol concentration.

Wolcott was advised of the consequences for refusing to take a blood or breath test.  He was specifically informed:

> If you refuse to take any tests and your record to operate a vehicle shows three or more prior alcohol or drug enforcement contacts during the ten years preceding the date the notice of administrative revocation was issued, your license and privilege to operate a vehicle will be revoked for ten years.

Wolcott was also informed that an "alcohol enforcement contact" means:[4]

> a.    Any administrative revocation ordered pursuant to

> (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

> . . . .

> (3)   With .08 or more grams of alcohol per two hundred ten liters of breath[.]

[4]    Wolcott's advisory mirrors HRS § 291E-1 (Supp. 2012), which provides in relevant part:

> "Alcohol enforcement contact" means:
> (1)   Any administrative revocation ordered pursuant to part III;
> (2)   Any administrative revocation ordered pursuant to part XIV of chapter 286, as that part was in effect on or before December 31, 2001;
>
> . . . .
>
> (4)   Any conviction in this State for operating or being in physical control of a vehicle while having an unlawful alcohol concentration or while under the influence of alcohol; or
> (5)   Any conviction in any other state or federal jurisdiction for an offense that is comparable to operating or being in physical control of a vehicle while having an unlawful alcohol concentration or while under the influence of alcohol.

     part III of chapter 291E, HRS.

    . . . .
    d. Any conviction in this State for operating or being in physical control of a vehicle while having an unlawful alcohol concentration or drug content or while under the influence of alcohol or drugs.
    e. A conviction in any other state or federal jurisdiction for an offense that is comparable to operating or being in physical control of a vehicle while having an unlawful alcohol concentration or unlawful drug content or while under the influence of alcohol or drugs.

Wolcott signed and acknowledged that he understood these sanctions. Based on Wolcott's arrest and refusal to submit to a blood or breath test, the ADLRO issued a Notice of Administrative Revocation on August 20, 2014.

The ADLRO conducted an administrative paper review of Wolcott's case and on August 21, 2014, mailed a Notice of Administrative Review Decision to Wolcott, informing him that his driver's license would be revoked for a period of ten years.

Wolcott requested an administrative review hearing. On June 8, 2015, Wolcott appeared with counsel at a license revocation hearing (the hearing) before an ADLRO hearing officer.[5] At the hearing, Wolcott's counsel asked the hearing officer to explain why the ADLRO revoked Wolcott's license for ten years. Counsel stated that he was aware that Wolcott had two prior alcohol enforcement contacts in Hawaiʻi, but could not find a third prior alcohol enforcement contact which would

---

[5] Hearing Officer Clayton K.F. Zane presided.

justify the ten-year revocation period. The hearing officer

cited the PDPS Abstract, which was in the file provided to

counsel,[6] as the source of the other two alcohol enforcement

contacts.[7]

Wolcott's counsel orally moved to strike the alleged

prior alcohol enforcement contacts from Oregon because the

abstract was not a sworn statement and there was no evidence as

to its source:

> I don't know how it was generated. I don't know how it got
> to this office. It is an official government document, and
> an official government document needs to be a sworn
> statement to be admissible in this proceeding.

Counsel stated that he was only contesting the ten-year

---

[6]     On August 25, 2014, the ADLRO mailed Wolcott a copy of the PDPS
Abstract, which was also in the discovery file provided to Wolcott's counsel.
However, the PDPS Abstract was an "untitled" document with "DRIVERS LICENSE
STATUS INQUIRY" printed at the top of each page. At the hearing, the hearing
officer did not state that the source of the document was the Problem Driver
Pointer System; he merely called it "the abstract."

[7]     When Wolcott's counsel asked the hearing officer to provide the dates
of the out-of-state alcohol enforcement contacts, the hearing officer stated
that Wolcott had one conviction for Driving Under the Influence (DUI) in
Oregon on May 22, 2007, and "one outside of Oregon." However, it appears
that the hearing officer misread the PDPS Abstract at that time. In the
hearing officer's written decision, the ADLRO determined that Wolcott had two
prior DUI convictions in Oregon and two prior OVUII convictions in Hawai'i.
The Oregon convictions are based on the following two entries in the ten-page
PDPS Abstract:

        CONVIC-ST: OR     CIT-DATE: 02/27/2005 <--------
        (Citation)
        OFFENSE: A21 DUI ALCOHOL      DTL:  CONV-DATE: 05/22/2007

        . . . .

        CONVIC-ST: OR     CIT-DATE: 06/18/2006 <--------
        (Citation)
        OFFENSE: A20 DUI ALC/DRUG     DTL:  CONV-DATE: 09/11/2006
                                              (continued. . .)

revocation and requested that the hearing officer amend the revocation period to reflect that Wolcott only had two prior alcohol enforcement contacts.

On June 10, 2015, the hearing officer filed his written decision affirming the administrative review decision to revoke Wolcott's driving privileges for ten years. Therein, the hearing officer denied Wolcott's oral motion to strike the PDPS Abstract reflecting any Oregon DUI convictions. The hearing officer determined that HRS § 291E-36(b)(4)[8] requires a listing of all alcohol enforcement contacts involving an OVUII arrestee who refuses to submit to a blood alcohol concentration test, but there is no requirement that the listing be a sworn statement. The hearing officer noted that the PDPS Abstract "is merely a

---

[8]      HRS § 291E-36(b) (Supp. 2012) provides:

> (b)   Whenever a respondent has been arrested for a violation of Section 291E-61 or 291E-61.5 and refuses to submit to a test to determine alcohol concentration or drug content in the blood or urine, the following shall be forwarded immediately to the director:
> (1)   A copy of the arrest report and the sworn statement of the arresting law enforcement officer, stating facts that establish that [there was reasonable suspicion to stop the vehicle; probable cause to believe the respondent was operating a vehicle under the influence of an intoxicant; that respondent was informed of possible sanctions; and that respondent refused to be tested];
>
> . . . .
>
> (4)   A listing of all alcohol and drug enforcement contacts involving the respondent.

(Emphasis added.)

compilation of a person's traffic infractions which can be accessed to show a person's out-of-state and in-state 'DUI' record."

The hearing officer made the following finding of fact: "Respondent has two (2) prior OVUII convictions in Hawai'i (6/27/13 and 4/14/13 arrests resulting in convictions on 3/20/14) and two (2) Oregon 'DUI' convictions (cited 2/27/05, convicted on 5/22/07; cited on 6/18/06, convicted on 9/11/06)." Accordingly, the hearing officer concluded as a matter of law that Wolcott "has four (4) prior alcohol enforcement contacts within ten (10) years preceding the date the [notice of administrative revocation] was issued to [Wolcott.]" Because Wolcott had four prior alcohol enforcement contacts within ten years preceding the date of the Notice of Administrative Revocation, the hearing officer affirmed the decision to revoke Wolcott's driving privileges for ten years.[9]

---

[9] HRS § 291E-41 (Supp. 2012) provides the criteria for determining the period of revocation. It provides in relevant part:

> (b) . . . The periods of administrative revocation, with respect to a license and privilege to operate a vehicle, that shall be imposed under this part are as follows:
>
> . . . .
>
> (3) A two-year revocation of license and privilege to operate a vehicle, if the respondent's record shows two prior alcohol enforcement contacts or drug enforcement contacts during the five years preceding the date the notice of

(continued. . .)

Wolcott sought judicial review by the district court and argued that the hearing officer erred in finding that Wolcott had two prior alcohol enforcement contacts in Oregon because (1) there was no foundation to support that the PDPS Abstract was competent evidence; and (2) Wolcott was not provided with notice of the PDPS Abstract before the hearing. The district court concluded that HRS § 291E-36(b)(4)[10] does not require the hearing officer to lay foundation for the listing of prior alcohol enforcement contacts involving Wolcott and affirmed the ADLRO's decision. Accordingly, the district court affirmed the ten-year revocation of Wolcott's license by Respondent/Respondent-Appellee Administrative Director of the Courts, State of Hawai'i (the Director) and entered a separate

---

administrative revocation was issued;

(4)   A minimum of five years up to a maximum of ten years revocation of license and privilege to operate a vehicle, if the respondent's record shows three or more prior alcohol enforcement contacts or drug enforcement contacts during the ten years preceding the date the notice of administrative revocation was issued;

. . . .

(c)   If a respondent has refused to be tested after being informed: [of the sanctions in this part if he refuses to submit to testing], the revocation imposed under subsection (b)(1), (2), (3), or (4) shall be for a period of two years, three years, four years, or ten years, respectively.

(Emphases added.)

[10]   See supra note 8 for the relevant text of HRS § 291E-36(b)(4).

(continued. . .)

judgment.

In his appeal to the ICA, Wolcott again argued that he was denied due process because (1) the hearing officer did not lay a foundation before admitting the PDPS Abstract; and (2) Wolcott did not have any notice as to what the PDPS Abstract was or that the hearing officer would rely on it in making his decision until after the administrative hearing.[11]

The ICA affirmed the district court's judgment, concluding that "[t]here is no requirement that evidence of prior alcohol enforcement contacts be in the form of a sworn statement." Additionally, the ICA noted that because "'[t]he respondent's prior alcohol and drug enforcement contacts <u>shall be entered into evidence</u>[,]'" the hearing officer "was statutorily required to enter the [PDPS Abstract] into evidence." (quoting HRS § 291E-38(f)) (emphasis added).

### III. STANDARD OF REVIEW

**A. Secondary Appeal**

"Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The

---

[11] At the hearing, the hearing officer told Wolcott's counsel that he was referring to the "abstract" as the source of the out-of-state alcohol enforcement contacts and counsel agreed that the abstract was "an official government document," but argued that the abstract was not a sworn statement and it was unclear how it was generated. On appeal, Wolcott claimed that he did not learn that the abstract originated from the Problem Driver Pointer System database until he received the hearing officer's written Decision.

standard of review is one in which this court must determine whether the court under review was right or wrong in its decision." Freitas v. Admin. Dir. of the Courts, 108 Hawai'i 31, 43, 116 P.3d 673, 685 (2005) (quoting Soderlund v. Admin. Dir. of the Courts, 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001)) (internal quotation marks, citations, and brackets omitted). "HRS § 291E-40 [2007][12] governs judicial review by the district court of an administrative revocation of a driver's license by the Director." Id. (footnote omitted). "The standard of review is one in which this court must determine whether the court [under review] was right or wrong in its decision[.]" Brune v. Admin. Dir. of the Courts, 110 Hawai'i 172, 176-77, 130 P.3d 1037, 1341-42 (2006) (internal quotation marks and citation omitted).

## IV. DISCUSSION

Wolcott argues that (1) the ADLRO failed to provide him with adequate notice as to what the PDPS Abstract was or how

---

[12]   HRS § 291E-40 (2007) provides in relevant part:

(c)   The sole issues before the court shall be whether the director:
(1)   Exceeded constitutional or statutory authority;
(2)   Erroneously interpreted the law;
(3)   Acted in an arbitrary or capricious manner;
(4)   Committed an abuse of discretion; or
(5)   Made a determination that was unsupported by the evidence in the record.
(d)   The court shall not remand the matter back to the director for further proceedings consistent with its order.

12

to decipher it prior to the hearing; and (2) admitting the PDPS Abstract without providing foundation violated Wolcott's right to due process. Wolcott notes that the PDPS Abstract is actually an untitled document and that the hearing officer failed to identify its source or explain how it was accessed when Wolcott's counsel questioned it at the hearing. Wolcott concedes that strict foundation requirements applied by courts in judicial proceedings do not apply in administrative proceedings, but maintains that there must be "some foundation for a document to be received in evidence at [administrative] hearings."

As a threshold issue, we first note Wolcott is correct that strict rules of evidence which apply to judicial proceedings do not apply to administrative proceedings. Honda v. Bd. of Trustees of the Employees' Ret. Sys. of the State, 108 Hawaiʻi 212, 218 n.12, 118 P.3d 1155, 1161 n.12 (2005). Thus, the ADLRO was not required to lay foundation for the PDPS Abstract within the meaning of the Hawaiʻi Rules of Evidence. However, we next address Wolcott's argument that in order to satisfy due process, the ADLRO must provide foundation for the PDPS Abstract prior to the hearing by identifying its source and providing an explanation as to the codes used in the PDPS Abstract.

13

This court has consistently stated that "[a] driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license." Slupecki v. Admin. Dir. of the Courts, 110 Hawai'i 407, 413, 133 P.3d 1199, 1205 (2006) (citing Kernan v. Tanaka, 75 Haw. 1, 22-23, 856 P.2d 1207, 1218-19 (1993)). "[P]rocedural due process requires that a person have an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" Freitas, 108 Hawai'i at 44, 116 P.3d at 686 (quoting Farmer v. Admin. Dir. of the Courts, 94 Hawai'i 232, 238, 11 P.3d 457, 463 (2000)).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Kernan, 75 Haw. at 22, 856 P.2d at 1218 (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). The appropriate process

> requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the government's interest, including the function involved and the fiscal or administrative burdens that the additional procedures would entail.

Id. at 22-23, 856 P.2d at 1218-19 (quoting Mathews, 424 U.S. 319, 334-35). Providing a presuspension revocation hearing is presumed to "sufficiently assure reliable results and provide adequate due process." Farmer, 94 Hawai'i at 239, 11 P.3d at

14

464. However, as the United States Supreme Court has observed, "manifestly there is no hearing when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute." Interstate Commerce Comm'n v. Louisville & N.R. Co., 227 U.S. 88, 93 (1913).

Applying the Mathews factors above, first, it is clear that revocation of a driver's license raises significant due process property interests. See Slupecki, 110 Hawaiʻi at 413, 133 P.3d at 1205.

Second, the procedures used to revoke Wolcott's driver's license, namely, sending him the PDPS Abstract with no explanation of its source or how to read it, are insufficient in light of the risk of an erroneous deprivation of his driver's license for a ten-year period of time. The PDPS Abstract is difficult to comprehend.[13] The information listing Wolcott's Oregon DUI convictions are contained in two brief entries in the ten-page PDPS. That information reads, in its entirety:

---

[13]  It is unclear how a layperson or pro se respondent would be able to understand the PDPS Abstract considering that neither the hearing officer nor Wolcott's counsel could accurately read it. At the hearing, Wolcott's counsel asked the hearing officer to provide the dates of the two out-of-state alcohol enforcement contacts, but the hearing officer was only able to provide the date of one of the Oregon DUIs and wrongly stated that the other was in another unnamed state. Thus, while we do not specify how the ADLRO should provide notice to respondents in driver's license revocation proceedings, we suggest that the ADLRO provide a listing that offers sufficient explanation of prior alcohol and drug enforcement contacts so that a respondent can understand and meaningfully respond — whether or not represented by counsel.

```
CONVIC-ST: OR      CIT-DATE: 02/27/2005 <------- (Citation)
OFFENSE: A21 DUI ALCOHOL      DTL:  CONV-DATE: 05/22/2007

. . . .

CONVIC-ST: OR      CIT-DATE: 06/18/2006 <--------
(Citation)
OFFENSE: A20 DUI ALC/DRUG      DTL:  CONV-DATE: 09/11/2006
```

This information is surrounded by other charges, convictions, and dates that appear to be irrelevant to the DUI convictions. Taking the ten-page PDPS Abstract as a whole, it is, as Wolcott states, "confusing to say the least."

Additionally, the hearing officer only revealed in his written decision — after the administrative hearing — that the evidence of Wolcott's Oregon DUI convictions came from the national Problem Driver Pointer System database. There is no indication of the source of the information on the face of the PDPS Abstract itself. At an ADLRO hearing, the respondent must have the "opportunity to be heard at a meaningful time and in a meaningful manner." Kernan, 75 Haw. at 22, 856 P.2d at 1218. The use of confusing and coded information in the PDPS Abstract and the failure of the hearing officer to explain to Wolcott the source of the information and how to decipher it denied Wolcott a meaningful opportunity to challenge the evidence of the Oregon DUIs. Accordingly, the procedures that the ADLRO implemented here presented a high risk of an erroneous deprivation of

16

Wolcott's constitutionally protected property interest.[14]

Third, while the government has a substantial interest in ensuring that drivers with multiple OVUII convictions are kept off of Hawaiʻi's roads, the administrative burden of providing a "listing of prior alcohol enforcement contacts," HRS § 291E-36(b)(4), that a respondent can understand and verify is not so high as to outweigh a driver's constitutionally protected property rights.  See Slupecki, 110 Hawaiʻi at 413, 133 P.3d at 1205.  Moreover, providing this information might lead to greater efficiency for the ADLRO, because a driver who receives a PDPS Abstract and is able to read and understand the ADLRO's evidence of prior alcohol enforcement contacts will be less likely to request a hearing unless it is actually warranted.

Therefore, on the facts of this case, Wolcott was denied due process when the ADLRO concluded that he had four prior alcohol enforcement contacts, because the PDPS Abstract failed to provide Wolcott with sufficient notice of the two Oregon alcohol enforcement contacts.

Accordingly, we hold that the district court's decision affirming the revocation of Wolcott's driver's license

---

[14]    In future cases, the ADLRO could minimize the risk of an erroneous deprivation by providing additional information to respondents along with the PDPS Abstract.  The ADLRO could simply provide an information sheet that explains the source of the information in the PDPS Abstract and include a legend or key to decipher the codes used.

for ten years was wrong because it relied on the ADLRO's erroneous inclusion of two prior alcohol enforcement contacts for which he did not receive adequate notice.

Having concluded that the ADLRO erroneously revoked Wolcott's driver's license for a period of ten years, we next consider the appropriate remedy on remand.

Wolcott's two prior OVUII convictions in Hawaiʻi are not in dispute. Had the ADLRO based its revocation decision solely on his two prior alcohol enforcement contacts in Hawaiʻi, HRS § 291E-41[15] mandates a revocation period of four years.

In the context of driver's license revocations, this court has held that when a hearing officer improperly considers an alcohol enforcement contact as the basis for extending the revocation period, the appropriate remedy is to reverse the additional revocation period. Custer v. Admin. Dir. of the Courts, 108 Hawaiʻi 350, 120 P.3d 249 (2005).

Here, the ADLRO reached the correct conclusion – that Wolcott's license should be revoked – but imposed the wrong penalty by revoking Wolcott's driver's license for ten years instead of four. Accordingly, we remand to the ADLRO with instructions to modify the revocation period in accordance with

---

[15] See supra note 9 for the relevant text of HRS § 291E-41.

this opinion.

## V. CONCLUSION

We hold that the process used by the ADLRO in this case to revoke Wolcott's driver's license for a period of ten years denied Wolcott due process.  Because Wolcott did not have adequate notice of the Oregon DUI convictions, he was unable to meaningfully respond to them.  Based on Wolcott's two prior Hawaiʻi OVUII contacts, the statutory revocation period for the instant OVUII arrest is four years.  Accordingly, we affirm the ICA's June 25, 2019 judgment on appeal in part, except that part of the judgment relating to the additional revocation period erroneously imposed for having three or more prior alcohol enforcement contacts.  We vacate the ICA's judgment relating to the additional six year-revocation period and remand to the ADLRO in accordance with our decision herein.

Earle A. Partington and
R. Patrick McPherson for
petitioner

Robert T. Nakatsuji
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

