**KANEOHE BAY CRUISES, INC.**, a Hawai'i corporation, **SEIG SCHUSTER**, and **YOSHIMASA YAMAGUCHI**, Plaintiffs–Appellants, v. **EDWARD Y. HIRATA**, individually and in his capacity as Director of the State Department of Transportation, and **DAVID E. PARSONS**, individually and in his capacity as the State Boating Manager of the State Department of Transportation, Defendants–Appellees

NO. 15865

(CIV. NO. 90–2081–07)

SEPTEMBER 24, 1993

MOON, C.J., LEVINSON AND RAMIL, JJ.
AND INTERMEDIATE COURT OF APPEALS
CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J.,
RECUSED, AND CIRCUIT JUDGE NAKATANI,
ASSIGNED BY REASON OF VACANCY

252

OPINION OF THE COURT BY MOON, C.J.

Plaintiffs–appellants Kaneohe Bay Cruises, Inc., Seig Schuster, President of Kaneohe Bay Cruises, and Yoshimasa Yamaguchi, a tour agent, (collectively, K–Bay) filed a complaint for declaratory and injunctive relief in circuit court, seeking to invalidate certain provisions of Act 313, passed by the 1990 Legislature, which bans the commercial operation of thrill craft and other commercial waterborne activities in Kaneohe and Maunalua Bays on weekends and on state and federal holidays. Kaneohe Bay Cruises operates a tour boat and water sports business which includes thrill craft operations. Yoshimasa Yamaguchi operates a tour business which caters to Japanese tourists. K–Bay's suit against defendants–appellees Edward Y. Hirata, individually and in his capacity as the Director of the State Department of Transportation, and David E. Parsons, individually and in his capacity as the State Boating Manager of the State Department of Transportation (collectively, the State) alleges that Act 313, § 4: (1) is unconstitutional as violative of equal protection; (2) invidiously discriminates against persons based on their race; and (3) is preempted by federal law.

K–Bay appeals the circuit court's grant of summary judgment in favor of the State on all of K–Bay's claims and the denial of K–Bay's subsequent motion for reconsideration. We affirm.

## I. BACKGROUND

This appeal is the last act in a sequence of events that began in 1987 when the Hawai'i legislature passed Act 247, directing the Department of Transportation (DOT) to adopt and promulgate rules to regulate the operation of

thrill craft in Hawai'i's waters. The legislature had determined that such measures were necessary because "the commingling in waters of thrill crafts and persons engaged in nonmotorized water activities is a threat to the public health and safety, justifying strict regulation." Sen. Conf. Comm. Rep. No. 57, in 1987 Senate Journal, at 839. Additionally, the legislature found that "thrill crafts have caused a significant deterioration of the environment" and that "the protection of the public health and safety and preservation of the general welfare require the prohibition of thrill craft operation in the waters of the State, except in areas . . . designated by the [DOT]." *Id.*

In 1988, the DOT adopted and promulgated the Ocean Recreation Management Rules and Areas (ORMRA), in which, among other things, commercial thrill craft operations were restricted in certain areas of Kaneohe Bay. In 1989, the legislature passed Act 342, requiring the DOT to adopt and promulgate additional restrictions on thrill craft operations, including time periods during which such operations would be entirely banned. The legislature found that "because areas such as Kaneohe Bay . . . are heavily utilized by the public, it has been proposed that all commercial ocean recreation activities be banned on weekends and holidays." Sen. Conf. Comm. Rep. No. 96, in 1989 Senate Journal, at 799. Additionally, the legislature stated that amendments included in Act 342 would allow the DOT "to initiate the suspension of thrill craft . . . during periods such as weekends and holidays when areas such as Kaneohe Bay . . . are heavily utilized by others, thereby improving overall public safety and minimizing conflicting uses." *Id.*

Pursuant to Act 342, the DOT proposed amendments to the ORMRA to ban commercial thrill craft operations in Kaneohe Bay on weekends and holidays. The DOT also

conducted public hearings on the proposed amendments. However, several commercial thrill craft operators successfully forestalled the DOT's effort by bringing suit to challenge the administrative procedure that the DOT had followed in proposing the amendments. In a settlement between the thrill craft operators and the State, the operators agreed to dismiss their complaint in return for the State's promise that it would not enforce the weekend and holiday ban until the procedure was amended.

Thereafter, in 1990, the legislature took the initiative and passed Act 313, banning, *inter alia*, commercial thrill craft operations in Kaneohe Bay and Maunalua Bay on weekends and holidays, and also banning all commercial ocean recreation activities in the two bays on Sundays. Specifically, Act 313, § 4 provides in pertinent part:

> (g) During all weekends and state and federal holidays, no commercial operator shall operate a thrill craft, or engage in parasailing, water sledding or commercial high speed boating, or operate a motor vessel towing a person engaged in water sledding or parasailing in Kaneohe Bay and Maunalua Bay on Oahu[.]
>
> (h) On Sundays, all commercial ocean recreation activities, including those listed in this section, shall be prohibited on Oahu in Kaneohe Bay and Maunalua Bay . . . effective January 1, 1991.

In § 1 of Act 313, the legislature included the following specific findings and declarations to explain the purpose of the Act:

> (1) The operation of thrill craft and high-speed motorized vessels in the waters of the State poses an unacceptable risk of harm to humans and the environment.

> The operation of thrill craft and high–speed motorized vessels in some of the State's heavily used recreational waters has resulted in the severe injury and death of recreational swimmers, not to mention a number of "close calls[.]"
>
> . . . .
>
> The legislature declares that the waters of the State used extensively by recreational swimmers should be safe from the dangers of thrill craft and high–speed motorized vessels which, by their very nature, are inherently risky vessels.
>
> . . . .
>
> In view of the inherently risky nature of thrill craft and high–speed motorized vessels and the documented injuries and deaths that thrill craft and high–speed motorized vessels have inflicted on people, the legislature declares that the unrestrained operation of thrill craft and high–speed motorized vessels in the waters of the State poses an unacceptable risk of harm to humans and the environment.
>
> The Legislature is cognizant that, except as otherwise provided by law, all ocean areas appertaining to any government management shall be and are forever granted to the people, for the free and equal use by all persons. However, the State is mindful that in managing and regulating ocean use, priority should be given to those seeking non–commercial recreational opportunities. To be a commercial operator is a privilege and not an exclusive right.

Act 313, § 1, 1990 Haw. Sess. Laws at 972. There were five public hearings on House Bill 2994, which later became

Act 313. At those hearings, commercial thrill craft opera-
tors, among others, were given ample opportunity to voice
their concerns.

On July 5, 1990, K–Bay brought suit in circuit
court for declaratory and injunctive relief. K–Bay sought
a declaration by the court that § 4 of Act 313 was uncon-
stitutional as violative of equal protection under both
the federal and Hawaiʻi State constitutions. K–Bay fur-
ther claimed that § 4 of Act 313 invidiously discriminated
against persons based on their race, national origin, and
alienage (specifically, Japanese tourists). K–Bay also
sought a permanent injunction against the enforcement of
Act 313, § 4.

On August 27, 1990, the State moved for summary
judgment; the motion was granted on November 23, 1990.
The circuit court determined that: (1) Act 313 is rationally
related to the perceived evil that it seeks to regulate; (2)
Act 313 neither facially nor as applied discriminates
against any particular group; and (3) the provisions of
Act 313 are not subject to federal preemption.

On November 26, 1990, K–Bay filed a motion for
reconsideration of the order granting summary judgment
pursuant to Hawaiʻi Rules of Civil Procedure (HRCP)
Rule 59(e).[1] The court denied the motion, stating that the
additional deposition testimony being offered by K–Bay
did not qualify as new evidence and that K–Bay had failed
to file a HRCP Rule 56(f)[2] motion to continue the sum-

---

[1] HRCP Rule 59(e) provides that "[a] motion to alter or amend the
judgment shall be served not later than 10 days after entry of the judg-
ment."

[2] Under HRCP Rule 56(f), "[s]hould it appear from the affidavits of
a party opposing the motion that he cannot for reasons stated present

mary judgment hearing in order to obtain the proffered deposition testimony. The court also denied K–Bay's offer of videotapes that purported to show examples of typical weekend and holiday water traffic at Kaneohe Bay.

After one false start in an appeal to this court, which was due to K–Bay's failure to obtain a circuit court order finalizing the judgment, this appeal followed.

## II. STANDARD OF REVIEW

On appeal, an award of summary judgment is reviewed under the same standard applied by the trial courts. *Gossinger v. Association of Apartment Owners of The Regency Ala Wai*, 73 Haw. 412, 417, 835 P.2d 627, 630 (1992) (citations omitted). Pursuant to HRCP Rule 56(c), summary judgment is proper where the moving party demonstrates that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id.*

HRCP 59(e) motions for reconsideration are reviewed under the abuse of discretion standard. *Id.* at 425, 835 P.2d at 634. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 114, 839 P.2d 10, 26, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *State v. Akina*, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992).

---

by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

## III. DISCUSSION
### A. The State's Motion for Summary Judgment

In its order granting summary judgment to the State, the circuit court ruled that Act 313 passed constitutional muster under the rational basis test, did not invidiously discriminate against any particular group, and was not subject to federal preemption.

### 1. Rational Basis Test

Although K–Bay concedes that the rational basis test is the correct standard to be applied in this case, K–Bay insists that Act 313 violates the equal protection clauses of both the federal and Hawai'i State constitutions. K–Bay argues that the Act singles out the class of commercial thrill craft operators and prohibits them from using thrill craft on weekends and holidays. K–Bay spends a considerable portion of its argument attempting to show that there are no significant differences between commercial and recreational users of thrill craft; for instance, K–Bay claims that both commercial and recreational operators use essentially the same type of thrill craft. K–Bay also contends that the legislature did not have enough empirical data upon which to have based its conclusions regarding the dangers of increased thrill craft use in Kaneohe Bay and Maunalua Bay (the Bays) and the increase in noise and "aural pollution."

K–Bay offers the deposition testimony of commercial thrill craft operators who claim that there has been no significant increase in thrill craft accidents due to commercial thrill craft operations. K–Bay also offers the deposition testimony of DOT officials who state that commercial thrill craft operations have already been restricted to certain areas of Kaneohe Bay. K–Bay con-

tends that all of the foregoing information demonstrates that the legislature could not have had a rational basis for its classification. However,

> [t]he classification attacked here is for regulatory purposes, and [therefore] the burden is upon [K–Bay] to show that it is arbitrary and capricious and that it bears no reasonable relation to the object of legislation. The general law is that regulatory classifications are presumed valid and constitutional, and *are to be upheld unless no reasonable state of facts is conceivable to support them.*

*State v. Cotton*, 55 Haw. 148, 150, 516 P.2d 715, 717 (1973) (citations omitted) (emphasis added).

> Under [the rational basis test], the court essentially asks whether a statute rationally furthers a legitimate state interest. In making this inquiry, a *court will not look for empirical data in support of the statute. It will only seek to determine whether any reasonable justification can be conceived to uphold the legislative enactment.*

*Nagle v. Board of Education*, 63 Haw. 389, 393, 629 P.2d 109, 112 (1981) (emphasis added) (citations omitted); *accord Daoang v. Department of Education*, 63 Haw. 501, 504–05, 630 P.2d 629, 631 (1981).

Once it is determined that the legislature passed the statute at issue to further a legitimate government purpose, then "the pertinent inquiry . . . is only whether the 'Legislature *rationally could have believed* that the . . . [classification] would promote its objective.' " *In re Bacchus Imports, Ltd.*, 65 Haw. 566, 574, 656 P.2d 724, 730 (1982), *rev'd on other grounds sub. nom., Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984) (citation omitted) (emphasis in original). Additionally,

> *[t]he lawmakers are under no obligation "to convince the courts of the correctness of their legislative judgments.* Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based *could not reasonably be conceived to be true* by the governmental decision-maker.' "

*Id.* (citations omitted) (emphasis added).

In light of the foregoing criteria enunciated by this court, we are persuaded that Act 313 passes constitutional muster under the rational basis test. It is undisputed that the Bays are heavily used for a variety of ocean activities. K–Bay itself conceded that the Act was passed to further the legitimate governmental purposes of water safety and environmental preservation in the Bays.

Despite its claims of the lack of real differences between commercial and recreational users of thrill craft, K–Bay has failed to demonstrate that the legislature could not reasonably have conceived that prohibiting commercial thrill craft operations on weekends and holidays would make the Bays safer and more environmentally sound. As previously noted, the legislature is not required to bring forth empirical data in support of its conclusions. On review of the legislative enactment, we need only determine whether the legislature could reasonably conceive that those conclusions — the legislative facts — are true.

In the instant case, common sense dictates that decreasing the number of thrill craft on the Bays on weekends and holidays would necessarily tend to make the Bays less congested and safer for their remaining users. The prohibition on commercial thrill craft

operations on weekends and holidays is a self–evident, and therefore rational, way to decrease the total number of thrill craft, thereby enhancing water safety and the environment in the Bays. It is difficult to perceive how K–Bay could refute this simple logic.

Moreover, the legislature adhered to the requirements of the rational basis test when it chose to single out commercial thrill craft operations, while continuing to allow recreational thrill craft use of the Bays. In *Nakano v. Matayoshi*, 68 Haw. 140, 706 P.2d 814 (1985), this court stated that once it is determined that the statute's purpose is legitimate, " 'the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' [E]qual protection does not mean government 'must choose between attacking every aspect of a problem or not attacking the problem at all.' " *Id.* at 153, 706 P.2d at 822 (citations omitted). Therefore, it is reasonable that the legislature, in the instant case, could have determined that the most prudent and measured response to the problem of water safety and environmental preservation in the Bays involved the prohibition of commercial thrill craft operations at the present time.

It must be remembered that the legislature has limited its ban on commercial thrill craft operations to weekends and holidays; commercial operators are free to ply their trade on the other five days of the week. This appears reasonable because it is logical that the number of purely recreational users of the Bays would increase most significantly on weekends and holidays. On the other hand, because the number of recreational users presumably decreases during the weekdays, it is reasonably foreseeable that unrestricted use by commercial thrill craft operators during that time would not significantly

increase the risk of potential harm to other users of the designated waters.

In further support of its position, K–Bay cites *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), wherein the United States Supreme Court struck down a city zoning ordinance that required a group home for the mentally retarded to obtain a special permit, ruling that the ordinance did not pass the rational basis test. The Court based its ruling on an extensive review of the factual record, which had been developed in the case, and found that the city was unable to articulate how its classification of the mentally retarded was rationally related to any of the legitimate government purposes which it claimed.[3] *Id.* at 446–50. The Court concluded that the city's classification appeared only "to rest on an irrational prejudice against the mentally retarded." *Id.*

*Cleburne* is clearly distinguishable from the present case. Act 313's regulation of commercial thrill craft operations, which was promulgated to enhance public safety and the environment in the waters of the State, is a far cry from the city of Cleburne's attempt to restrict the location of group homes for the mentally retarded. In *Cleburne*, the Supreme Court was unable to conceive of a single reasonable explanation for the city's ordinance, whereas in the instant case, common sense provides

---

[3] We note that by imposing upon the city an affirmative burden of establishing that the ordinance had a rational basis, the Supreme Court employed an "active" rational basis review, thereby shifting the burden to the government. *See Pruitt v. Cheney*, 963 F.2d 1160 (9th Cir. 1991), *denying reh'g en banc of and superseding* 943 F.2d 989 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 655 (1992). Accordingly, in cases like *Cleburne*, there is no presumption of constitutionality and thus no duty upon one who challenges the constitutional validity of a statute to rebut such presumption.

ample justification for the legislature's attempt to relieve congestion in the Bays by prohibiting commercial thrill craft operations on weekends and holidays. Additionally, although the Supreme Court ultimately did not find the mentally retarded a suspect class for equal protection purposes, it is clear that the Court nevertheless perceived an essential difference between the mentally retarded, as a class, and the more mundane sorts of classification created by routine regulatory legislation, such as that in the present case. *Id.* at 455–78 (opinion of Marshall, J.).

K–Bay insists that genuine issues of material fact remain in dispute. We acknowledge that many issues of fact remain in dispute between the parties; however, the disputed facts are not material within the contemplation of the summary judgment rule, HRCP Rule 56. Because Act 313 must only pass the rational basis test, which requires only that the legislature could reasonably conceive the truth of the facts upon which the challenged classification is based, we hold that the State was entitled to summary judgment as a matter of law on this issue.

## 2. **Invidious Discrimination Against Japanese Tourists**

K–Bay claims that because much of its business is derived from Japanese tourists, Act 313 invidiously discriminates against those tourists in violation of the equal protection clause. We agree with the State that K–Bay lacks standing to litigate this claim.

This court has stated that

[s]tanding is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the

outcome of the controversy' as to warrant [*the plaintiff's*] invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf."

***Hawai'i's Thousand Friends v. Anderson***, 70 Haw. 276, 281, 768 P.2d 1293, 1298 (1989) (citation omitted) (emphasis in original); *see also* ***Kaapu v. Aloha Tower Dev. Corp.***, 74 Haw. 365, 390–91, 846 P.2d 882, 893 (1993) (citations omitted). Additionally, "[o]ne who would challenge the constitutional validity of a statute must show that *as applied to him* the statute is invalid. Constitutional rights may not be vicariously asserted." ***State v. Marley***, 54 Haw. 450, 457, 509 P.2d 1095, 1101 (1973) (emphasis added).

None of the plaintiffs in this case is a Japanese tourist who would be adversely affected by the ban in Act 313 on commercial thrill craft operations in the Bays on weekends and holidays. Because constitutional rights may not be vicariously asserted, K–Bay lacks standing to challenge Act 313 on the claim of invidious discrimination.

Moreover, Act 313 clearly does not facially discriminate against any group on account of race, national origin, or alienage. And there is no evidence in the record that the application of Act 313 invidiously discriminates against any group. We therefore hold that the State was entitled to summary judgment as a matter of law on this issue.

### 3. Federal Preemption

K–Bay's federal preemption argument reduces to the following two propositions: (1) the federal government has not put any use restrictions on the waters of Kaneohe Bay including thrill craft operations, therefore, the State is preempted from instituting any such restrictions; and

(2) federal law does preempt the field of required performance standards for safety equipment in recreational vessels; therefore, the State is precluded from restricting commercial thrill craft operations in the Bays. Both of K–Bay's arguments are *non–sequiturs.*

Simply because the federal government has not itself instituted any restrictions over the waters of Kaneohe Bay does not mean that the State is precluded from doing so. Indeed, the very fact that the federal government has left the field open suggests that the State may legitimately exercise its own inherent police power in this area.

In *Gouveia v. Napili–Kai, Ltd.*, 65 Haw. 189, 192, 649 P.2d 1119, 1122 (1982), *cert. denied,* 461 U.S. 904 (1983), we stated that "there is no unerring test to determine just when . . . [state law] is without effect by reason of [federal] preemption." We further noted that a federal purpose to displace state law could be evidenced in one of several ways:

> " *'The scheme of federal regulation* may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Or *the Act of Congress* may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Or the state policy may produce a result inconsistent with the objective of *the federal statute.'* " And, "[o]f course, a state statute is void to the extent it conflicts with *a federal statute* — if, for example, 'compliance with both federal and state regulations is a physical impossibility[.]' "

*Id.* at 192, 649 P.2d at 1122–23 (citations omitted) (emphasis added).

K–Bay has failed to demonstrate that any of the foregoing conditions exist in the present case. It is difficult to discern how K–Bay could do so because all of the foregoing conditions at least presume that a federal statute of some kind is at issue. As K–Bay itself concedes, there is no such federal statute or regulation in the instant case.

Instead, as we have noted, K–Bay argues that because the federal government has *not* acted to regulate thrill craft in Kaneohe Bay, the State is thereby precluded from doing so. K–Bay's argument is meritless; if it were not, the State could never legislate with respect to subjects that the federal government has not acted upon. Moreover, the record demonstrates that at least one federal agency — the National Marine Fisheries Service — has been consistently prodding the State to institute regulations restricting thrill craft usage in order to better preserve the habitat of humpback whales and green sea turtles.

The State concedes that federal law preempts state legislation in the area of performance and safety standards for recreational vessels and equipment.[4] However, simply because commercial thrill craft must be held to a

---

[4] United States Code (U.S.C.) chapter 43, *Recreational Vessels*, § 4036 *Federal preemption* provides:

> Unless permitted by the Secretary under section 4305 of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) that is not identical to a regulation prescribed under section 4302 of this title.

federal standard regarding performance and safety standards, it does not follow that the State is thereby precluded from restricting the time periods during which those same thrill craft may be operated in State waters. The two areas of regulation are distinct from one another.

Accordingly, because federal law does not preempt the State from restricting commercial thrill craft operations in the Bays, the State was entitled to summary judgment as a matter of law on this issue.

## B. **K–Bay's Motion for Reconsideration**

K–Bay's final contention is that the circuit court abused its discretion when it denied K–Bay's motion for reconsideration of the order granting summary judgment in favor of the State. K–Bay claimed that it had new evidence to offer in the form of two additional depositions, those of Brooks Cooper, a marine patrol officer with the Harbors Division of the DOT, and David Parsons, State boating manager with the DOT. K–Bay stated that it had been unable to schedule these depositions in time to have them available for the hearing on the State's motion for summary judgment.

The circuit court ruled that these two depositions did not constitute new evidence such that a motion for reconsideration should be granted. The court noted that both Cooper and Parsons were readily available to K–Bay and that, with the exercise of due diligence, K–Bay could have obtained their deposition testimony in time for the summary judgment hearing. Additionally, the court pointed out that K–Bay's proper course in this situation was to avail itself of the usual HRCP 56(f) procedure, [5] whereby K–Bay could have moved for a continuance of

---

[5] *See supra* note 2.

the summary judgment proceedings in order to obtain the deposition testimony. K–Bay, however, failed to do so, thereby demonstrating a lack of due diligence.

In *Gossinger v. Association of Apartment Owners of The Regency Ala Wai*, 73 Haw. 412, 427, 835 P.2d 627, 635 (1992), we affirmed the circuit court's denial of a motion for reconsideration because appellant "could have and should have produced" its "new evidence" at the original summary judgment hearing. Implicit in the circuit court's denial of K–Bay's motion for reconsideration in the instant case is a similar finding that K–Bay could have and should have been in a position to present the two depositions at the original summary judgment hearing and that having failed to do so constituted a failure of due diligence. Because both Cooper and Parsons were readily accessible to K–Bay, the circuit court was well within its discretion in denying K–Bay's motion for reconsideration, especially in light of the fact that K–Bay could have easily moved to continue the summary judgment proceedings if it needed more time to obtain its evidence.

K–Bay also attempted to use its motion for reconsideration to introduce several videotapes which it claimed would show that weekend and holiday thrill craft traffic in Kaneohe Bay was not as heavy as the State believed. The circuit court refused to consider these videotapes in ruling on K–Bay's motion for reconsideration. Though the court did not provide a specific reason for its refusal to consider the videotapes, it is apparent that the tapes also could have and should have been presented in the original summary judgment proceedings.

The three tapes purported to show waterborne traffic in Kaneohe Bay on a weekday, a weekend day, and a holiday, respectively. There appears to be no legitimate

reason why such videotapes could not have been prepared in time for presentation in the original summary judgment proceedings. Moreover, as in the deposition situation, K–Bay could and should have moved for a continuance under HRCP 56(f) if it needed more time to obtain or prepare the videos. Accordingly, the circuit court was well within its discretion in refusing to consider the three tapes.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's order granting summary judgment in favor of the State and the order denying K–Bay's motion for reconsideration of the order granting summary judgment.

On the briefs:

*Clayton C. Ikei* for plaintiffs–appellants.

*Dawn N. S. Chang* and *Johnson H. Wong*, Deputies Attorney General, for defendants–appellees.