**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000344
30-OCT-2024
09:26 AM
Dkt. 59 SO**

CAAP-20-0000344

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ELIZABETH RIGOTTI and STEPHEN RIGOTTI,
Petitioners-Appellants-Appellants,
v.
PLANNING DEPARTMENT OF THE COUNTY OF KAUAI/PLANNING
COMMISSION OF THE COUNTY OF KAUAI; SEAN MAHONEY, in his
official capacity as Chairperson of the Planning Commission,
Respondents-Appellees-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC191000108)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

In this secondary appeal, Petitioners-Appellants-Appellants Elizabeth Rigotti and Stephen Rigotti (collectively, the **Rigottis**) appeal from the Final Judgment (**Judgment**) entered by the Circuit Court of the Fifth Circuit (**Circuit Court**) on April 1, 2020.[1]

The Rigottis operated a transient vacation rental (**TVR**) in Hanalei on the north shore of Kauaʻi. The property at issue (the **Property**) falls outside of the designated Visitor

---

[1]     The Honorable Kathleen N.A. Watanabe presided.

Destination Areas (**VDAs**), and as such the Rigottis were required to renew their transient vacation rental nonconforming use certificate (**Non-conforming Use Certificate**) annually.  They successfully did so every year from 2014 to 2017.  In 2018, however, they did not file their renewal application before the deadline; the Rigottis claim that they would have done so but for a severe storm that impacted Kauaʻi, particularly the north shore.  They subsequently filed their application one day late, and they argue that the Kauaʻi Planning Department (**Planning Department**), Kauaʻi Planning Commission (**Planning Commission**), and the Circuit Court all erred in failing to conclude that the Respondent-Appellee-Appellee the County of Kauaʻi (the **County**) and its agencies could and should have accepted their late Nonconforming Use renewal application (**Renewal Application**).

The Rigottis raise five points of error on appeal, contending that the Circuit Court erred when it:  (1) concluded that the Planning Department's issuance of the May 1, 2018 Cease and Desist, and Forfeiture of Non-Conforming Use Certificate letter (**Forfeiture Letter**), which denied the Renewal Application, complied with the law; (2) concluded that the strict enforcement of the renewal deadline did not violate the due process clauses of the United States and Hawaiʻi Constitutions; (3) concluded that an emergency proclamation did not suspend the zoning ordinances, when the proclamation provided a mechanism to accept the Rigottis' renewal packet after the renewal deadline; (4) did not address the fact that the Planning Department and/or Planning Commission possessed the equitable power to accept the renewal

packet just one day after the arbitrary renewal date; and (5) concluded that the blatant procedural errors on the part of the Planning Department and the Planning Commission hearing officer (**Hearing Officer**) did not amount to a violation of the Rigottis' right to due process.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the Rigottis' points of error as follows:

(1)  The Rigottis argue that the Circuit Court erred when it concluded that the Planning Department's issuance of the Forfeiture Letter and denial of the Renewal Application complied with the law; they submit that the only way the Rigottis' nonconforming use can be eliminated in compliance with Hawaii Revised Statutes (**HRS**) § 46-4 (Supp. 2023) is if the use is discontinued.  The County argues that the Planning Department was not delegated the authority to deviate from the Kauaʻi Comprehensive Zoning Ordinance (**CZO**), Kauaʻi County Code, which imposes a strict deadline, and as a result, neither the Planning Department nor the Planning Commission could grant the relief sought by the Rigottis - a variance from the renewal deadline - and thus both entities acted lawfully.

HRS § 46-4 states, in pertinent part:

> **§ 46-4  County zoning.**  (a) This section and any ordinance, rule, or regulation adopted in accordance with this section shall apply to lands not contained within the forest reserve boundaries as established on January 31, 1957, or as subsequently amended.
>
> Zoning in all counties shall be accomplished within the framework of a long-range, comprehensive general plan prepared or being prepared to guide the overall future

development of the county. . .  The zoning power granted herein shall be exercised by ordinance which may relate to:

(1)  The areas within which agriculture, forestry, industry, trade, and business may be conducted;

(2)  The areas in which residential uses may be regulated or prohibited;

. . . .

(4) The areas in which particular uses may be subjected to special restrictions;

. . . .

The council of any county shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section.  The ordinances may be enforced by appropriate fines and penalties, civil or criminal, or by court order at the suit of the county or the owner or owners of real estate directly affected by the ordinances.

. . . .

The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole. . . .

. . . .

<u>Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises</u> for any trade, industrial, residential, agricultural, or other purpose for which the building or premises is used at the time this section or the ordinance takes effect; <u>provided that a zoning ordinance may provide for elimination of nonconforming uses as the uses are discontinued</u>[.]

(Emphasis added).

Prior to 2008, the CZO permitted single-family residences to be used as TVRs.  In 2008, Ordinance 864 amended portions of the CZO to regulate the operation of TVRs outside VDAs and required those homeowners to register their TVRs as nonconforming and submit an annual renewal application.  The CZO was again amended in 2012 by Ordinance 935, which amended, *inter alia*, the date the renewal application was required from July 31

of each year to "the date of issuance of the non-conforming use certificate." In 2013, Ordinance 950 again amended the CZO and added a clause providing for the automatic denial of late applications. Ordinance 950 stated, in pertinent part:

> SECTION 5. Chapter 8, Article 17, of the Kauaʻi County Code 1987, as amended, shall be amended to read as follows:
>
> **§ 8-17.10 Nonconforming Use Certificates for Single Family Vacation Rentals**.
>
> . . . .
>
> (h) The owner or lessee who has obtained a Nonconforming Use Certificate under this section shall apply to renew the Nonconforming Use Certificate annually on the date of issuance of the nonconforming use certificate.
>
> > (1) Each application to renew shall include proof that there is a currently valid State of Hawaiʻi general excise tax license and transient accommodations tax license for the nonconforming use and shall be received by the Department prior to the expiration date of a held Nonconforming Use Certificate. Failure to meet this condition will result in the automatic denial of the application for renewal of the Nonconforming Use Certificates.

Similarly, the Interpretive Administrative Zoning Rules and Regulations (**Interpretive Zoning Rules**) that took effect in November 2017 state, in pertinent part:

> 1. **NON-CONFORMING USE CERTIFICATE (NCUC) RENEWAL**
>
> A. **Requirements for Renewal**. Applications for renewal shall be accepted by the Planning Department ... no earlier than [sixty (60)] days prior to the NCUC's expiration date. The annual renewal deadline is on the same day and month of the original determination made by the Planning Department[.]
>
> . . . .
>
> C. **Late Renewal Applications**. Failure to submit an application to renew the NCUC by the NCUC's expiration date will result in the automatic denial of the application. The Planning Department shall not accept applications submitted after the expiration date.

The County exercised the authority granted under HRS § 46-4 by enacting, *inter alia*, Ordinance 950 § 8-17.10(h)(1), which requires homeowners with Nonconforming Use Certificates to annually renew their registration with the County and states that "[f]ailure to meet this condition will result in the automatic denial of the application for renewal of the Nonconforming Use Certificates."

HRS § 46-4(a) grants counties zoning power in several enumerated areas, including "[t]he areas in which particular uses may be subjected to special restrictions[.]"  The CZO and Interpretive Zoning Rules unambiguously prohibit the Planning Department from accepting late renewal applications.

The Rigottis argue, in essence, that their failure to fulfill the zoning ordinance's condition nevertheless cannot be construed as a "discontinuing" of the use under HRS § 46-4.  To the contrary, we conclude that the County may lawfully determine when the use is discontinued by conditioning the retention of the nonconforming use on the performance of a reasonable condition, such as annual registration.  See, e.g., Texaco, Inc. v. Short, 454 U.S. 516, 525-26, (1982) (states have "the power to provide that property rights . . . shall be extinguished if their owners do not take the affirmative action required by the State."); Bd. of Zoning Appeals v. Leisz, 702 N.E.2d 1026, 1030-31 (Ind. 1998) (forfeiture of the nonconforming use of a rental property based on the failure to file a registration did not implicate the owners' constitutional rights).

The CZO did not prohibit or eliminate the Rigottis' nonconforming use; their failure to comply with the CZO's administrative deadline did. Had the Rigottis continued to renew their Nonconforming Use Certificate in a timely manner, as they had done from 2014 to 2017, their Nonconforming Use Certificate would not have discontinued. Instead, they discontinued their Nonconforming Use Certificate by failing to comply with the conditions imposed by the CZO. To conclude that HRS § 46-4 prohibits zoning ordinances from determining the manner in which nonconforming uses are discontinued would undermine the County's delegated authority and instead would permit the Rigottis to disregard the strict requirement to timely renew their certificate and otherwise comply with CZO.

(2) The Rigottis contend that the Circuit Court erred when it concluded that the County's enforcement of the renewal deadline did not violate the due process clauses of the United States and Hawaiʻi Constitutions. The Rigottis argue that their due process rights were violated when the Planning Commission and Circuit Court construed CZO § 8-17.10(h)(1) as authorizing the forfeiture of nonconforming use by missing an "arbitrary" renewal deadline.

"Even with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties." U.S. v. Locke, 471 U.S. 84, 104 (1985). Further, "[a]s long as the constraint or duty imposed is a

reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties."  Id.

Courts review zoning ordinances to determine whether the challenged regulations are rationally related to a legitimate government interest.  See City of Cleburne v. Cleburne Living Cntr., 473 U.S. 432, 448 (1985) (applying the rational basis test to a challenge to a city zoning ordinance).  When reviewing for rational basis, "the court essentially asks whether a statute rationally furthers a legitimate state interest."  Kaneohe Bay Cruises, Inc. v. Hirata, 75 Haw. 250, 260, 861 P.2d 1, 7 (1993) (brackets omitted).  Then, "[o]nce it is determined that the legislature passed the statute at issue to further a legitimate government purpose, then the pertinent inquiry . . . is only whether the Legislature *rationally could have believed* that the . . . classification would promote its objective."  Id. (citation, some internal quotation marks and brackets omitted).

Here, the State of Hawaiʻi has granted the counties various zoning powers, subject to certain limitations.  See HRS § 46-4; see also HRS § 514E-4 (2018) ("The several counties shall, by amendment of their zoning ordinances, limit the location of time share units, time share plans and other transient vacation rentals, within such areas as are deemed appropriate.").  The County articulated its rationale for classifying and regulating TVRs in 2008 in Ordinance 864, which stated, in pertinent part:

**SECTION 1. Findings and Purpose.**

The Council of the County of Kauaʻi finds that there is a compelling need to regulate single-family transient vacation rentals on Kauaʻi. Single-family transient vacation rentals are occurring at a greater rate and inflicting a larger impact on the community of Kauaʻi than was ever anticipated in the County's original Comprehensive Zoning Ordinance. While this type of visitor unit could be compatible with the character and nature of Kauaʻi and while it has certain positive advantages to the community and is desirable in terms of offering a mix of accommodations to the visitor, the uncontrolled proliferation of vacation rentals in residential and other areas outside the Visitor Destination Areas (VDAs) is causing significant negative impacts to certain residential neighborhoods, foreshadowing similar potential impacts on other areas of the island.

Ordinance 950 stated that its purpose was to amend the CZO to "provide a process to identify and register those single-family transient vacation rentals as nonconforming uses which have been in lawful use prior to March 7, 2008 and to allow them to continue subject to obtaining a nonconforming use certificate as provided by this section." This court has previously held that the purpose of this portion of the Kauaʻi CZO is "consistent with the requirements of HRS § 46-4(a) as well as the constitutional protection provided to property owners with vested rights to pre-existing lawful uses of their property." Robert D. Ferris Tr. v. Plan. Comm'n of Cnty. of Kauai, 138 Hawaiʻi 307, 313, 378 P.3d 1023, 1029 (App. 2016). The County had a rational basis for regulating TVRs and requiring that those properties "grandfathered in" with Nonconforming Use Certificates meet certain requirements, such as an annual filing of the Renewal Application. The renewal requirements are rationally tied to a valid County interest, and we conclude that the County rationally could have believed that its CZO and Interpretive Zoning Rules would promote its objective. See Kaneohe Bay Cruises, 75 Haw. at

260, 861 P.2d at 7.  Thus, we conclude there is no substantive due process violation.

With respect to procedural due process claims, the Hawaiʻi Supreme Court has held that:

> This court conducts a two-step analysis to determine whether there was a due process right to a contested case hearing, considering:  "(1) whether the particular interest which the claimant seeks to protect by a hearing is 'property' within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is 'property,' what specific procedures are required to protect it. [Sandy Beach Def. Fund v. City Council of Honolulu, 70 Haw. 361, 376, 773 P.2d 250, 260 (1989)].

Protect & Pres. Kahoma Ahupuaʻa Ass'n v. Maui Plan. Comm'n, 149 Hawaiʻi 304, 312, 489 P.3d 408, 416 (2021) (original brackets omitted).

The Rigottis have owned the Property since 2014.  When they purchased the Property, it came with a then-current Nonconforming Use Certificate.  We conclude the preexisting lawful use of the Property as a nonconforming TVR is a property right.  See Robert D. Ferris Tr., 138 Hawaiʻi at 312, 378 P.3d at 1028.

> Regarding the second prong:

> Procedural due process "requires that parties be given a meaningful opportunity to be heard.  This implies the right to submit evidence and argument on the issues. Application of Haw. Elect. Light Co., 67 Haw. 425, 430, 690 P.2d 274, 278 (1984).  However, "[d]ue process is not a fixed concept requiring a specific procedural course in every situation," and "calls for such procedural protections as the particular situation demands."  Sandy Beach, 70 Haw. at 378, 773 P.2d at 261 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) (emphasis added).  In determining the procedures required to comply with constitutional due process, courts consider the following factors:  "(1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail." Id.

Kahoma Ahupuaʻa, 149 Hawaiʻi at 313, 489 P.3d at 417.

Here, the Rigottis were properly grandfathered in to the County scheme that permitted nonconforming use outside of VDAs. They were notified of their failure to comply and provided an opportunity to appeal the Planning Department's decision to issue the Forfeiture Letter. There is also no dispute that they knew the required renewal date. Indeed, the Rigottis successfully complied with the CZO every year between 2014 and 2017. And while the Rigottis repeatedly refer to the renewal deadline as "arbitrary," this is merely an apt description of the nature of a deadline, not evidence of a due process violation. See Locke, 471 U.S. at 100-01 ("[R]egardless of where the cutoff line is set, some individuals will always fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.").

After receiving the Forfeiture Letter, the Rigottis participated in a contested case hearing and had the ability to submit evidence on their behalf, cross-examine witnesses, and present argument on the evidence. Notwithstanding the flooding that hindered (but did not completely prevent) the filing of the Renewal Application in the final days before the deadline, there was nothing in the record evidencing that the Renewal Application could not have been filed well before the deadline.

We conclude that the risk of erroneous deprivation of the Rigottis' right was low, and the probable value of additional

or alternative procedural safeguards was minimal.[2]  The Rigottis'
due process rights were not violated.

(3)  The Rigottis argue that the Circuit Court erred
when it concluded that the Governor's April 15, 2018 Proclamation
regarding weather events on Kauaʻi (**Proclamation**) did not suspend
the zoning ordinances, and failed to conclude that the
Proclamation provided a means for the Planning Department to
accept the renewal packet after the renewal deadline.   The
Proclamation stated, in pertinent part:

> **NOW, THEREFORE**, I, DAVID Y. IGE, Governor of the State
> of Hawaiʻi, hereby determine that an emergency or disaster
> contemplated by section 127A-14, [HRS] has occurred in the
> above areas in the State of Hawaiʻi, and do hereby proclaim
> the County of Kauai, State of Hawaiʻi, to be a disaster area
> <u>for the purpose of implementing the emergency management
> functions as allowed by law, authorizing the expenditure of
> State monies as appropriated for the speedy and efficient
> relief of the damages, losses, and suffering resulting from
> the emergency or disaster</u>, and hereby authorize and invoke
> the following measures under [the HRS]:
>
> . . . .
>
> 2.    Sections 127A-13 and 127A-12, [HRS], I hereby
> suspend as allowed by federal law and <u>to the
> extent necessary to provide emergency relief as
> a result of this event</u>, the following statutes:
>
> . . . .
>
> e.    Chapter 46, [HRS], **county organization and
> Administration** as any county ordinance,
> rule, regulation, law, or provision in any
> form applies to any county permitting,
> licensing, zoning, variance, processes,
> procedures, fees, or any other
> requirements <u>that hinder, delay, or impede
> the purpose of this Proclamation</u>.

(Emphasis added).

The Governor possesses broad authority to declare an
emergency and exercise his or her powers under HRS chapter 127.
<u>See</u> <u>For Our Rights v. Ige</u>, 151 Hawaiʻi 1, 10, 507 P.3d 531, 540

---

[2]    Specific alleged procedural deficiencies raised in the Rigottis'
fifth point of error are discussed <u>infra</u>.

(App. 2022). Here, the Governor exercised those powers and stated that the Proclamation's intent was to "implement[] the emergency management functions as allowed by law, [and] authoriz[e] the expenditure of State monies as appropriated for the speedy and efficient relief of the damages, losses, and suffering resulting from the emergency or disaster[.]" To that end, the Proclamation suspended "to the extent necessary to provide emergency relief" HRS chapter 46 and county ordinances regarding permitting, licensing, zoning, or variances "that hinder[ed], delay[ed], or impede[d] the purpose of this Proclamation." (Emphasis added).

The Rigottis argue that "requiring someone to drive on the roads in unsafe conditions while emergency workers are trying to repair the damaged area, hinders the purpose of the Emergency Proclamation." Such an interpretation of the Proclamation ignores that the Proclamation suspended certain statutes and ordinances "to the extent necessary to provide emergency relief" and did not otherwise suspend or extend deadlines under those statutes or ordinances. Permitting a post-deadline renewal of a nonconforming use certificate was not necessary to provide emergency relief, nor did the relevant portion of the CZO hinder, delay, or impede the purposes of the Proclamation.

We conclude that the Proclamation did not suspend the filing deadline or otherwise provide the Planning Department a means to accept the Rigottis' late Renewal Application.

(4) The Rigottis argue that the Planning Department and Planning Commission had the equitable power to accept the

-13-

renewal packet after the deadline, and that both entities should have exercised those equitable powers.  However, the Planning Department and Planning Commission were limited to the authority delegated to them by the County.  Article XIV of the County of Kauaʻi Charter states, in pertinent part:

> ***ARTICLE XIV***
> ***PLANNING DEPARTMENT***
>
> . . . .
>
> Section 14.03.  <u>Duties and Functions of the Planning Commission</u>.  The planning commission shall:
>
> . . . .
>
> D.  Hear and determine petitions for varying the application of the zoning ordinance with respect to a specific parcel of land and <u>may grant such a variance pursuant to the variance provisions established by the council in the zoning ordinance</u>.

(Emphasis added).

CZO § 8-17.10 and the Interpretive Zoning Rules did not authorize the Planning Department or Planning Commission to grant a variance, and instead respectively state that "[f]ailure to meet this condition will result in the automatic denial of the application for renewal of the Nonconforming Use Certificates," and that "[f]ailure to submit an application to renew the NCUC by the NCUC's expiration date will result in the automatic denial of the application.  The Planning Department shall not accept applications submitted after the expiration date."

We conclude that the Circuit Court did not err concerning the denial of equitable relief.

(5)  The Rigottis further argue that the Circuit Court erred when it concluded that the Planning Department's and Hearing Officer's alleged procedural errors did not amount to a

-14-

violation of the their due process rights.  First, they submit that the Forfeiture Letter incorrectly stated the time the Rigottis had to appeal.  Second, they claim they were wrongfully denied discovery, thus hindering their ability to prepare their case.  Third, they argue that they were wrongfully denied an opportunity to present oral argument to the Planning Commission.

The County acknowledges that the Forfeiture Letter contained incorrect information regarding the date for appeal. However, the Rigottis nevertheless timely filed their first notice of appeal.  We thus deem the error harmless.  <u>See</u> Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); HRS § 91-14(g) (Supp. 2023) (permitting a court to reverse or modify an agency decision <u>if the substantial rights of the parties have been prejudiced</u>) (emphasis added).

Regarding discovery, the Rules of Practice and Procedure of the [Planning Commission] (**RPPC**) § 1-6-9(b) states that the presiding officer of a planning commission hearing "shall not order or approve civil style discovery against non-parties; and unless stipulated by all parties, the Presiding Officer shall not order or approve civil style discovery between parties."  The Rigottis argue that the lack of certain discovery (such as communications regarding the Rigottis' case, policy documents, and any communications regarding the emergency proclamations and the Planning Department) resulted in deprivation of their right to procedural due process.  They cite

no binding precedent to support their claim, nor do they explain how the requested discovery would have impacted the issue of whether they failed to file the renewal by the deadline; they instead make conclusory statements regarding the requested discovery and their right to due process.

Upon review of the record and arguments, we cannot conclude that relief is warranted. The Rigottis cite HRS § 91-11 (2012)[3] in support of their argument that they were wrongfully denied an opportunity to present oral argument to the Planning Commission. The County argues that HRS § 91-11's requirements were satisfied because the Hearing Officer offered a recommended decision, the Rigottis filed exceptions and presented argument, and then the Planning Commission issued its decision and order.

RPPC § 1-6-19 states, in pertinent part:

> 1-6-19 <u>Post Agency Hearing Procedures for Hearing Conducted by Hearing Officer</u>.
>
> . . . .
>
> (d) Oral Argument Before the Commission.
>
> > (1) If a Party desires to argue orally before the Commission, a written request with reasons therefore shall accompany the

---

[3] HRS § 91-11 states:

> **§ 91-11 Examination of evidence by agency**. Whenever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

> exceptions filed.  The Commission <u>may</u>
> grant the request.

(Emphasis added).

There is no procedural right to oral argument under RPPC § 1-6-19(d)(1) and HRS § 91-11.  We recognize that if there was evidence that had not been heard or examined, then a decision could not be made before the Rigottis had an opportunity to file exceptions and present argument.  <u>See</u> <u>White v. Bd. of Educ.</u>, 54 Haw. 10, 13, 501 P.2d 358, 361 (1972) ("The general rule is that if an agency making a decision has not heard the evidence, it must at least consider the evidence produced at a hearing conducted by an examiner or a hearing officer.") (citation omitted).  However, the Rigottis filed Petitioners' Exceptions to Hearing Officer's Report and Recommendation of Contested Case on June 4, 2019.  The Rigottis noted their exceptions, and provided argument, and it does not appear that they presented any new evidence for consideration.

Accordingly, we conclude that the Planning Commission complied with HRS § 91-11.  <u>See</u> <u>Trivectra v. Ushijima</u>, 112 Hawaiʻi 90, 107, 144 P.3d 1, 18 (2006).  We thus conclude that the Circuit Court did not err in declining to grant relief pursuant to HRS § 91-14.

For these reasons, the Circuit Court's April 1, 2020 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, October 30, 2024.

On the briefs:

Gregory W. Kugle,
Joanna C. Zeigler,
(Damon Key Leong Kupchak
 Hastert),
for Petitioners-Appellants-
 Appellants.

Matthew M. Bracken,
County Attorney,
Chris Donahoe,
Deputy County Attorney,
Office of the County Attorney,
for Respondents-Appellees-
 Appellees.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge